FIRST NAT. BANK OF CLEVELAND v. ORTEN.

No. 3655.   Opinion Filed June 30, 1914.

Rehearing Denied September 8, 1914.

(142 Pac. 1096.)

1. BANKRUPTCY—Preference—What Constitutes—Homestead — Insurance Money. Where for more than six months immediately before the filing of the petition in bankruptcy the bankrupt was a resident of the state, the head of a family, and the owner of a lot in a city and a two-story building thereon, on the lower floor of which he did business and lived on the upper floor, and the value thereof did not exceed $5,000, and where, prior to his adjudication in bankruptcy, said building was destroyed by fire, and where certain insurance money realized therefrom, within four months of the filing of the petition in bankruptcy, was paid by him to one of his creditors, held, that said lot and building were exempt to him as a homestead under Rev. Laws of Oklahoma 1910, secs. 3342, 3343, and that neither the title to said property nor the insurance money realized therefrom passed to the trustee in bankruptcy, and that said payment did not constitute a preference in violation of sections 60a and 60b of the Bankruptcy Act of July 1, 1898, c. 541, 30 St. at L. 562 (U. S. Comp. St. 1901, p. 3445), as amended by the Act of Feb. 5, 1903, c. 487, sec. 13, 32 St. at L. 799 (U. S. Comp. St. Supp. 1911, p. 1506).

2. SAME—"Preference"—What Constitutes. Within four months of the filing of the petition in bankruptcy, the bankrupt, after the destruction of certain property not exempt to him, assigned a policy of insurance thereon to his indorser on a promissory note payable to the defendant bank. A draft for the amount of the policy was afterwards made payable to him, and the indorser and the bankrupt thereafter cashed the draft at the bank and applied most of the proceeds in payment of the indorsed note. Assuming that the bankrupt was insolvent at the time, it was neither alleged nor proved that either the indorser or the bank had reasonable cause to believe that he was insolvent. Held, that such payment did not constitute a preference to the bank to the amount of the draft within the contemplation of sections 60a and 60b of the Bankruptcy Act of July 1, 1898, c. 541, 30 St. at L. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, sec. 13, 32 St. at L. 799 (U. S. Comp St. Supp. 1911, p. 1506).

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*

*L. M. Poe, Judge.*

Action by L. V. Orten, trustee in bankruptcy, against the First National Bank of Cleveland, a corporation. Judgment for plaintiff, and defendant brings error. Reversed.

*Dillard & Blake,* for plaintiff in error.

*Biddison & Merritt* and *Orten & McNeill,* for defendant in error.

TURNER, J.   On September 1, 1910, in the district court of Pawnee county, L. V. Orten, trustee in bankruptcy of the estate of Wm. Scott, defendant in error, sued First National Bank of Cleveland, plaintiff in error, to recover $1,500, an alleged preference made to the bank by the bankrupt within four months of the filing of the petition in bankruptcy in violation of sections 60a and 60b of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by the act of 1903, which reads:

"A person shall be deemed to have given a preference, if being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt, than any other of such creditors of the same class.  *  *  *  If a bankrupt shall have" given "a preference and the person receiving it, or to be benefited thereby, or his agent acting therein shall then have reasonable cause to believe" that it was intended thereby to give "preference, it shall be voidable by the trustee and he may recover the property or its value from such person.  And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

There was trial to a jury and judgment for the trustee for $1,435, and the bank brings the case here.  It complains that the judgment is not sustained by the evidence and is contrary to law.  The undisputed facts are that on November 22, 1909, a petition in involuntary bankruptcy was filed against Scott in the United States District Court for the Western District of this state, and on May 19, 1910, he (Scott) was adjudged a bankrupt; that for several years prior to July 21, 1908, he was a resident of Cleveland, Okla., the head of a family, and owned no

real estate other than a two-story frame building in that city located on a certain lot belonging to him known as lot 12, block 19; that therein he did business as a grocer and used the second floor as his home; that on said date the building and its contents were destroyed by fire; that at that time he was the owner of three fire insurance policies in three different companies, one for $1,000 on the building, another of $600 ($450 of which was on the grocery stock and $150 on the store fixtures and furniture), and another of $300 on his household goods; that after the fire, on the same day, he assigned two of said policies, the one for $1,000 and the one for $600, to one Richards, who was indorser for him on a $900 note payable to the defendant bank, to which he was indebted in all "a little better than $1,400"; and thereafter three separate drafts were issued by the insurance companies, one for $1,000, one for $600 payable to Richards, and the other for $300 payable to the bankrupt, which, when received, were on February 24, 1910, cashed at defendant bank and enough of the proceeds of the two drafts issued to Richards applied in payment of the bankrupt's said indebtedness, amounting in all to $1,435. As to the proceeds of the $300, no more need be said, as the same was not paid to the bank, as a part of this alleged preference. As to the $1,000 draft, said payment did not constitute a preference within the contemplation of said section of the statute. This for the reason that the same, being the proceeds realized from the insurance of the homestead of the bankrupt, which was exempt, is also exempt from the payment of his debts, and, being exempt, the title thereto did not pass to the trustee.

Bankruptcy Laws 1898, c. 3, sec. 6, reads:

"This act shall not affect the allowance to the bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

At that time Rev. Laws of Okla. 1910, sec. 3342, provided:

"The following property shall be reserved to the head of every family residing in the state exempt from * * * the

payment of debts  *  *  *  the homestead of the family, which shall consist of the home of the family.  *  *  *"

Section 3343:

"The homestead within any city or town, owned and occupied as a residence only, shall consist of not exceeding one acre of land  *  *  *  provided,  *  *  *  that in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value  *  *  * $5,000.  *  *  *"

It is not contended that this house and lot was in excess of that value.

Bankruptcy Laws 1898, sec. 70a, provides:

"The trustees respectively  *  *  *  (II) set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment."

And further:

"The trustee of the estate of a bankrupt, upon his appointment and qualification,  *  *  *  shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt."

Construing these and other sections of the statute in *Joel W. Lockwood v. Exchange Bank, etc.,* 190 U. S. 299, 23 Sup. Ct. 753, 47 L. Ed. 1063, the court said:

"We think that the terms of the Bankruptcy Act of 1898, above set out, as clearly evidence the intention of Congress that the title to the property of a bankrupt, generally exempted by state laws, should remain in the bankrupt and not pass to his representative in bankruptcy, as did the provisions of the act of 1867, considered in *Re Bass.* The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act in unambiguous language declares shall not pass from the bankrupt or become part of the bankruptcy assets."

Being therefore of opinion, as we are, that said lot, together with the buildings destroyed, was, at the time he was adjudged a bankrupt, exempt to him under the state law and that the title

thereto did not pass to the trustee, it follows that the proceeds of the $1,000 draft realized from the insurance arising from the exempt property was also exempt. 21 Cyc. 500, says:

"Since the homestead statutes are to be liberally construed, it follows that funds realized from the insurance of the exempt premises are themselves exempt, as they do not represent a mere personal contract of indemnity, but the homestead itself."

See, also, *Puget Sound, etc., Co. v. Jeffs et al.*, 11 Wash. 466, 39 Pac. 962, 27 L. R. A. 808, 48 Am. St. Rep. 885.

We are also of opinion that the bank can be heard to interpose this defense. *Elwell v. Hitchcock et al.*, 41 Kan. 130, 21 Pac. 109. The judgment, therefore, is contrary to law only in so far as the payment of said $1,000 is concerned, and can only be sustained so far as to permit a recovery of the proceeds of said $600 draft; that is, if the turning over of that money, under the circumstances, operated as a preferred payment to the bank.

The case was tried upon the theory that the assignment of the policy to Richards as indorser, the subsequent issuing of the $600 draft payable to him, and the turning over by him of the proceeds thereof to the bank in part payment of Scott's note would constitute a preferred payment by the bankrupt to the bank. Such it would not be, unless the same was done with intent to give a preference and the bank had reasonable cause to believe Scott to be insolvent.

*Shelton v. First Nat. Bank of Mannsville*, 31 Okla. 217, 120 Pac. 959, was a suit under this same statute to recover from the bank an alleged preference. The facts were that Ray, the bankrupt, some six or eight weeks prior to his adjudication as such, was indebted to the bank by promissory note, and that Jones and McLaughlin were his sureties. We said:

"About ten days before the filing of his said petition, Ray sold and conveyed some of his real estate to his said sureties, Jones and McLaughlin, who paid him the purchase money therefor, by check drawn on the defendant bank, which, when the same was presented, deducted the balance due on said note, marked it paid, and handed it to said Ray, together with $200 for the balance due him on the check presented, which he turned over to his mother-in-law in payment of a debt due her. * * * Assuming that Ray's insolvency at the time appears from the

evidence, the transaction plainly involves a preference to the extent of the amount paid, provided defendant or its agent had reasonable cause to believe that it was intended thereby to give it a preference. But as cause for such belief implies, as its foundation, reasonable cause to believe that the debtor was insolvent at the time it was made, within the meaning of that term as defined by said act (July 1, 1898, sec. 1, c. 15), and plaintiff has failed to point out the existence of any fact or circumstance which should have induced defendant to a reasonable belief of Ray's insolvency, and we can find none, we cannot see how such could be imputed to defendant. *In re Eggert* (D. C.) 98 Fed. 843. And that, too, although notice of facts which would incite a person of reasonable prudence to inquire, under similar circumstances, is notice of all the facts which a reasonably diligent inquiry would develop. For, as is said in *Re Andrews* (D. C.) 135 Fed. 600: 'If the creditor has reasonable cause to believe that the debtor is insolvent, then the creditor has cause to believe that a preference is intended.' There being no evidence tending to prove that at the time of the alleged preference defendant had any knowledge of the financial condition of Ray, or had any reason to inquire, but evidence only to the effect that the only specific financial transaction between them was that he contracted with defendant a loan, well secured, which he afterwards paid with checks drawn by his sureties against funds placed to their credit in said bank, the proceeds of a loan advanced to them on their individual note, payable to defendant, we are of opinion that the evidence was insufficient to charge defendant with having received a preference as alleged, and for that reason and that the court did not err in so holding, the judgment is affirmed."

As much can be said of the bank here concerning notice of insolvency. Believing, as we do, that defendant received the payment in question in good faith and in the usual course of business, the judgment of the trial court is reversed.

All the Justices concur.