In re Howard L. LEWIS and Nancy L. Lewis, Howard L. Lewis, t/d/b/a Lewis Trucking and Leasing, Debtors and Plaintiffs,

v.

John W. THOMPSON, Jr., Trustee, Defendant.

Bankruptcy No. 1–80–00701.
Adv. No. 1–81–0273.

United States Bankruptcy Court, M.D. Pennsylvania.

March 24, 1983.

Linus E. Fenicle, Ernico & Fenicle, P.C., Harrisburg, Pa., for debtors and plaintiffs.

John W. Thompson, Jr., York, Pa., Trustee.

## MEMORANDUM

### OBJECTION TO DISCHARGE AND RIGHTS TO FIRE INSURANCE PROCEEDS

ROBERT J. WOODSIDE, Bankruptcy Judge.

This case is on remand to us for a hearing consistent with the memorandum and order of U.S. District Judge, William W. Caldwell, dated September 28, 1982, (Civ. No. 82–0956). The trustee has filed a motion for revocation of discharge alleging that the debtors attempted to fraudulently conceal assets when they filed their schedules which were later amended by substantially increasing the value of personal property to claim exemptions in fire insurance proceeds. The debtors deny that allegation of fraudulent concealment and complain that the trustee has failed to disburse the value of their exemptions in personal property held by the trustee in the form of fire insurance proceeds. On November 10, 1982, we held a hearing at which testimony was heard and evidence presented.

## FINDINGS OF FACT

1. On October 27, 1980, at 10:55 a.m., the debtors filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code just in time to stay the sale of their property by the Sheriff of York County which was scheduled for 2:00 p.m. on the same day.

2. The debtors had consulted counsel, Linus E. Fenicle, in regard to filing bankruptcy approximately one week prior to filing their petition.

3. The debtors and counsel prepared the bankruptcy schedules in counsel's office approximately three days before the filing of the bankruptcy petition.

4. Counsel for the debtors advised them that there was an exemption allowed for household furnishings, household goods, wearing apparel, and various appliances each of which totalled $400.00 when a joint bankruptcy was filed. Counsel later realized, after the filing of the bankruptcy petition, that the exemption was $400 for each item of personal property.

5. The debtor's understanding was that they would get the $400 exemption for each category of personal property and that the rest would be distributed to their creditors.

6. From memory while at their counsel's office, the debtors valued their personal property, jewelry, clothes and home office furniture at a total value of $3,550 as listed in their schedules.

7. On or about November 3, 1980, only one week after the filing of the bankruptcy petition, the debtors' residence and personal property were destroyed by fire.

8. The debtors made a claim with their insurance carrier for additional living expenses, structure proceeds, and contents coverage.

9. The debtors were informed by the insurance adjuster, Mr. Tablonski of the General Adjustment Bureau of Harrisburg, that in order to make a claim for contents coverage they should list each item, estimate the age of each item, and then find the replacement cost of the items from store catalogues.

10. The debtors, along with their children, reconstructed each and every room in their house and every item in that room. They listed every item that they could remember and beside that item estimated its age, and then found its replacement cost from a Sears, Best or Penny's catalogue as instructed by the insurance adjuster. This list took three months to prepare.

11. The insurance claim totalled $95,329.03 utilizing the method as directed by the insurance adjuster; and, after adjustments to value, the insurance company paid the contents coverage in the amount of $43,500 to the trustee in bankruptcy.

12. On or about May 27, 1981, the debtors amended their schedules B–2 and B–4 of their bankruptcy petition by submitting a copy of their insurance claim which itemized all of their personal property and the values attributed to that personal property.

13. The debtors also amended their schedule B–4 to claim an exemption under 11 U.S.C. § 522(d)(3) in the amount of $43,500 (no one item exceeding $400.00).

## DISCUSSION

*Concealment of Assets*

■ The trustee has alleged in his motion for revocation of discharge that the debtors fraudulently concealed assets. Although no specific citation to a Bankruptcy Code section was made, the trustee presumably relies on the following pertinent provisions of section 727(a)(2) of the Code:

    (a) The Court shall grant the debtor a discharge, unless,—

    .    .    .    .    .

    (2) The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition; . . . .

11 U.S.C. § 727(a)(2). We can readily understand why the Honorable Thomas Wood, Bankruptcy Judge, 21 B.R. 282, had found fraud from his original perusal of the debtors' schedules and amended schedules prior to the District Court's remand for a hearing. A first impression of fraudulent concealment is created by the substantial discrepancy in property values and exemptions claimed between the debtors' original bankruptcy schedules and their amended schedules, especially after a fire destroyed all the debtors' property. The amendment of the schedules appeared to be solely to recover fire insurance proceeds on property that the debtors deliberately omitted from their original filings in order to secret those items from the bankruptcy proceeding.

However, after a trial at which testimony and evidence was taken, we find no evidence proving the essential allegations necessary to sustain the objection of the trustee. We find no factual grounds on which to draw an inference that the debtors actually intended to fraudulently conceal assets when they filed their original petition and schedules. *See* Rule 407 of the Bankruptcy Procedures; and, *In re La Bonte,* 13 B.R. 887 (Bkrtcy.D.Kan.1981). On the contrary, we find from the clear light of the testimony that the discrepancy between their original schedules and amended schedules resulted from the last minute efforts to stay the sheriff's sale and the misunderstanding of the debtors as to their exemption entitlements.

354

*Fire Insurance Proceeds*

Even if no fraudulent conduct of the debtors is evident, the trustee argues in the alternative that the debtors have no entitlement to the fire insurance proceeds because the exemptions available extend only to their interest in property, not cash proceeds. Fire insurance proceeds are not among the enumerated payments which the debtors have a right to receive under section 522(d)(11). The trustee, therefore, argues that fire insurance proceeds are excluded from the exemptions available to the debtors, and consequently should be for the benefit of the bankruptcy estate.

The debtors, however, contend that since the property destroyed by the fire was exempt property, the insurance proceeds are also exempt. For authority, the debtors cite the following footnote from Colliers on Bankruptcy:

> The weight of authority is that if the property is exempt, the proceeds of insurance on the property are also exempt. *First National Bank v. Orten,* 43 Okla. 325, 33 Am.B.R. 108, 142 Pac. 1096: *Ellis v. Pratt City,* 111 Ala. 629, 20 So. 649, 33 L.R.A. 264 . . . .

4A Collier on Bankruptcy, para. 70.24, § 70a(5), p. 337, n. 2 (14th ed. 1978). *See also,* 1A Collier on Bankruptcy, para. 6.16, p. 899 (14th ed. 1978). However, the debtors cited authority evolved under the former Bankruptcy Act (Act). Under section 70(a) of the Act, exempt property never became property of the bankrupt estate. If the debtor was entitled to the exempt property, he was entitled to its proceeds as well. *See* Section 70 of the Bankruptcy Act, 11 U.S.C. § 110.

Under the new Bankruptcy Code, all the debtor's property becomes property of the bankrupt estate until it is listed for exemption without objection. *See* 11 U.S.C. §§ 522 and 541. Therefore, the fire insurance proceeds, paid to the trustee, are property of the bankrupt estate at least initially. We, however, think that if the debtors could have exempted the property before the conflagration, they are now entitled to the fire insurance proceeds. "The general rule is that the (debtor's) exemptions are determined as of the time of the filing. 11 U.S.C. § 522(b)." *In re Sivley,* 14 B.R. 905, 910 (Bkrtcy.E.D.Tenn.1981). At the time the debtors filed their petition, their property existed as property available for the exemptions before the postpetition fire destroyed it. We therefore hold that the debtors are entitled to the proceeds from their fire insurance policy in compensation for the loss of their exempt property. Furthermore, to deny the debtors the proceeds would frustrate the intent of Congress because such a denial would impair the debtors' fresh start which is facilitated by the exemptions.

CONCLUSIONS OF LAW

(1) The discrepancies between the debtors' original schedules and their amended schedules resulted from the pressure to avert an imminent sheriff sale and the misunderstanding of the debtors as to their exemptions, rather than from any fraudulent conduct of the debtors.

(2) Since the debtors had property available for exemptions at the time they filed a petition in bankruptcy, the fire insurance proceeds of that destroyed property are also exempt.

Accordingly, we will enter an appropriate order.