Joseph *v.* New York Life Ins. Co., Appellant.

Argued May 24, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*A. G. Dickson,* for appellant.—The policy in suit not having been claimed exempt in the bankruptcy proceedings, the exemption was lost: Moran v. King, 111 Fed. 730; Chicago B. & O. R. R. v. Hall, 229 U. S. 511; Lockwood v. Bank, 190 U. S. 294.

The insurance company was entitled to rely upon the surrender of the policy by the trustee in bankruptcy.

*Charles Green,* for appellee.—It has always been the policy of congress, both in general legislation and in bankruptcy acts to give effect to the state exemption laws. The rule is well settled that, in determining the right to exemption, the state law, as interpreted by the highest judicial tribunal of the state, is controlling: Holden v. Stratton, 198 U. S. 212; In re Lang, 20 Fed. (2d) 236; In re French, 231 Fed. 255; Lockwood v. Bank, 190 U. S. 294.

OPINION BY MR. JUSTICE MAXEY, June 30, 1932:

This is a suit in assumpsit by Bessie Joseph against the New York Life Insurance Company. Plaintiff claims as beneficiary under a policy of insurance in the sum of $2,000 on the life of her deceased husband, Leonard L. Joseph. He at the time of the delivery of the policy to

him and until his death on December 8, 1930, was a resident of New Jersey. On October 29, 1929, while the policy was in force, Joseph was adjudged a bankrupt, and Maurice L. Praissman was appointed trustee. Joseph made claim in the bankruptcy proceedings for his exemption under the laws of New Jersey. The trustee set apart for the bankrupt as his exemption certain hats and fixtures valued at $200. The action of the trustee was confirmed by the referee. The articles so set aside were taken by Joseph as his exemption. Joseph failed to claim as exempt under the state statute the life insurance policy.

On January 21, 1930, the trustee notified the insured to pay the trustee $127.32, being the cash surrender value of the policy. On March 25, 1930, while the policy was still in force and after Joseph had refused to pay the sum demanded, the trustee forwarded the policy to the defendant, and the latter cancelled it, and paid to the trustee its cash surrender value. This value would have been sufficient to continue the policy in force as extended insurance to a date subsequent to the date of the death of the bankrupt.

The eighth paragraph of the plaintiff's statement of claim avers: "Such cancellation or attempted cancellation was without the consent or approval and against the express direction of both Leonard L. Joseph, the insured, and Bessie Joseph, the beneficiary, and the plaintiff herein." Defendant's answer to this paragraph is as follows: "Admitted."

The affidavit of defense filed admits the first fourteen paragraphs of the statement of claim including the eighth paragraph just quoted, and the substance of the first affidavit of defense is that it was Joseph's duty to make a claim for the exemption of his policy and that he did not do this, nor did the trustee in bankruptcy set the same apart for him, as exempt; that on January 15, 1930, the defendant notified the trustee that the policy had a total cash surrender value of $127.32, available

upon surrender of the policy at any time within three months from January 14, 1930, unless the premium then due be paid within the grace period of one month; that said premium was not paid; that the trustee gave written notice to the insured of the amount of the cash surrender value and the insured's right to redeem the policy within thirty days by paying the trustee this amount, that the insured did not do this and thereupon the trustee surrendered the policy to defendant. The defendant paid the trustee the cash surrender value. The defendant filed a supplemental affidavit of defense which set forth that not only was the said policy of life insurance not claimed by the said Leonard L. Joseph, bankrupt, as exempt, but also the policy, on a date subsequent to the setting apart, confirmation and taking of his exemption by the bankrupt, to wit, on January 17, 1930, was unconditionally delivered to the trustee by the attorney for Leonard L. Joseph in the bankruptcy proceedings.

Plaintiff entered "a rule for judgment against the defendant and in favor of the plaintiff for want of sufficient affidavit of defense for the following reasons, to wit, that the said affidavit of defense admits the proper execution of the policy of insurance and that it was in force at the time of cancellation by the company and admits that under the bankruptcy law and under the law of New Jersey which applies to same, it had no right to cancel said policy."

The court below made absolute the rule for judgment for want of sufficient affidavit of defense and on appeal to the Superior Court, the judgment of the court below was affirmed.

The statement of the plaintiff's claim quotes sections 38 and 39 of the Act of the Legislature of New Jersey, P. L. 1902. This latter paragraph reads as follows: "Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue, assigned, transferred or in any way made payable to a

married woman or to any person in trust for her or for her benefit whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit and to that of her children according to the terms and provisions of the policy or assignment subject to the above provisions relating to premiums paid in fraud of creditors."

Appellant admits that under the laws of New Jersey, a policy of insurance payable to the wife of a bankrupt is exempt and that if proper claim for exemption had been made by the plaintiff for the setting aside of this policy as exempt, it would have been the duty of the trustee in bankruptcy to recognize the exemption, and to set it aside for the benefit of the bankrupt and his wife. There is, therefore, but one question in this case and that is whether or not the exemption provided for by the statute of New Jersey was lost by the failure of the bankrupt to claim it.

In Holden v. Stratton, 198 U. S. 202, 213, the Supreme Court of the United States in an opinion by Mr. Justice WHITE said: "It has always been the policy of Congress, both in general legislation and in bankrupt acts, to recognize and give effect to the state exemption laws." This was a case in which the Supreme Court upheld the validity of the statute of the state of Washington exempting proceeds of all life insurance from liability for any debt. This included the proceeds of paid-up policies and endowment policies payable to the assured during his lifetime.

Lockwood v. Exchange Bank, 190 U. S. 294: In this case it appears that the constitution of Georgia allowed a general exemption of property, realty or personalty, or both, to the value of $1,600 from levy or sale, and by another provision of the same constitution, a debtor was vested with the power to waive or renounce in writing this right of exemption, except as to wearing apparel,

and not exceeding $300 worth of household and kitchen furniture, and provisions.

The question presented for review was: Has the bankruptcy court jurisdiction to protect or enforce against the bankrupt's exemption the rights of creditors not having a judgment or other lien, whose promissory notes or other like obligations to pay contain a written waiver of the homestead and exemption authorized and prescribed by the constitution of the state, or are such creditors to be remitted to the state courts for such relief as may be there obtained?

The Supreme Court said: "Under the Bankruptcy Act of 1867, it was held that property generally exempted by state law from the claims of creditors was not part of the assets of the bankrupt and did not pass to the assignee, but that such property must be pursued by those having special claims against it in the proper state tribunals."

Justice WHITE in that case after quoting from Justice BRADLEY'S opinion in Re Bass, 3 Woods 382, says: "It is made as clear as anything can be, that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the rights to the exemption makes no difference. ......We think that the terms of the Bankruptcy Act of 1898, as clearly evidence the intention of Congress that the title to the property of a bankrupt generally exempted by state laws should remain in the bankrupt and not pass to his representative in bankruptcy, as did the provisions of the Act of 1867, considered in Re Bass."

In Collier on Bankruptcy, 13th edition, 327, it is said: "Whether an exemption is a mere personal privilege which must be claimed by the bankrupt, or is a property interest accruing from the statute itself, will determine the necessity of claiming the exemption. If the exemption is of the former class, it must be asserted with the formality required by the state statute; if it is of the latter class, the statute executes itself."

In Re French, 231 Fed. 255, the Federal District Court of the Northern District of New York discussed the exemption based on section 1390 of that state's code of civil procedure, which provides that certain property when owned by a householder, including stoves put up or kept for use shall be exempt. The court held that "these stoves were unqualifiedly exempt, and that such title never passed to or vested in the trustee in bankruptcy. No assertion or claim for exemption was necessary. It was evident on the face of things that these stoves were exempt and it was the duty of the trustee to set them apart or at least let them alone."

The appellant in his argument in attempting to distinguish the cases of Lockwood v. Exchange Bank and In re French, supra, said: "It is to be noted that those decisions were upon questions arising in the bankruptcy proceeding itself and it is submitted that as the insured in the present case did make a claim to have specified articles set apart as exempt and did not claim the policy as exempt, but unconditionally delivered it to the trustee and made no effort thereafter to have his claim to exemption properly amended, or the policy set apart as exempt, his failure to act operated as a waiver binding upon the plaintiff in this action, who was the beneficiary under the policy."

We think the appellant attempts to support its argument too much upon the allegation, in the supplemental affidavit of defense, that the attorney for Leonard L. Joseph in the bankruptcy proceedings unconditionally delivered to the trustee the insurance policy in question. In the face of the averment in the eighth paragraph of the plaintiff's statement, the truth of which was admitted by the affidavit of defense, that the cancellation or attempted cancellation of the policy was without the consent or approval and against the express direction of both Leonard L. Joseph and Bessie Joseph, the beneficiary, we think the averment in the supplemental affidavit of defense as to the mere physical delivery of this

policy by the attorney to the trustee is entirely without legal effect. There is in defendant's pleadings an entire absence of an averment of any formal assignment or surrender of this policy in writing by the insured to the trustee in bankruptcy or to the insurance company. Title never passed from the insured. His being adjudicated a bankrupt did not per se divest him of his title. Nothing short of a positive unequivocal act on his part could have worked a divestiture of title. The delivery of the policy to the trustee by the bankrupt's lawyer did not constitute such a positive unequivocal act. Even if it had been authorized, it is doubtful if this physical delivery alone would have been sufficient to have passed title from the bankrupt to the trustee, but this question we do not need to and do not decide, for, as a step in the attempted cancellation or surrender of the policy, it was "without the consent or approval and against the express direction of both Leonard L. Joseph, the insured, and Bessie Joseph, the beneficiary."

In Smith v. Metropolitan Life Insurance Company, 43 Federal Reporter (2d series) 74, the insured was adjudged a voluntary bankrupt. He owned a policy of life insurance in the Metropolitan Life Insurance Company in the sum of $5,000. It had a cash surrender value of $625.43. The beneficiary was his wife. Notice was given to the bankrupt of the cash surrender value and demand was made upon him to pay the surrender value to the trustee, if he wished to redeem the policy. He did not redeem. The trustee obtained an order on the bankrupt, his wife and the insurance company requiring them to show cause why the cash surrender value should not be paid to the trustee, and why the bankrupt should not be compelled to execute the documents and papers necessary to accomplish the payment of the surrender value to the trustee. The bankrupt and his wife appeared at the hearing. The report of the case does not show that they made any claim for exemption. The insurance company appeared and filed an answer setting

up that the cash surrender value was exempt under the Insurance Law of the state of New Jersey. The referee held that the surrender value of the policy was not exempt, and that the trustee was entitled to be paid it as part of the estate of the bankrupt. Neither the bankrupt nor the wife appealed from the referee's order, but the insurance company did so, and the United States District Court of New Jersey reversed the decree and denied the petition of the trustee. The United States Circuit Court of Appeals affirmed the judgment of the district court, holding that the cash surrender value of the insurance policy on the life of the bankrupt, in which the right to change the beneficiary without the existing beneficiary's consent is reserved, is exempt during the bankrupt's lifetime, under sections 38 and 39 of the Insurance Law of the State of New Jersey (the same sections cited by plaintiff in this case) and under the provisions of the United States Bankruptcy Act.

In the case of In re Lang, 20 Fed. Rep. (2d series) 236, the United States District Court held that, under section 6 of the Bankruptcy Act, life insurance policies which are exempt under law of the state of bankrupt's residence are exempt from claim of bankrupt's creditors, even though these policies may have a cash surrender value, and this section is not limited or controlled by the proviso in section 70-a of the Bankruptcy Act that bankrupt may retain policies only by paying to the trustee the cash surrender value thereof. In that case, Judge KIRKPATRICK said: "It is settled law that policies of life insurance which are exempt under the law of the state of the bankrupt's residence are exempt under the Bankruptcy Act of 1898, even though they may have a cash surrender value. If the state law exempts the cash surrender value of life insurance policies, the provisions of section 70-a do not apply, and the trustee cannot compel the payment to him of the cash surrender value by withholding the policies."

Collier on Bankruptcy, 13th edition, page 1744, says: "Exempt property constitutes no part of the estate in bankruptcy, and does not pass to the trustee. Exemptions are created by the state law, and the function of the bankruptcy court is to sever the property found to be an exemption from the estate of the bankrupt, the title remaining in the bankrupt, the trustee having merely a qualified right to possession."

We agree with President Judge TREXLER of the Superior Court that "the policy [on Joseph's life] never became a part of the bankrupt's estate. The insurance company had no warrant by reason of the policy being produced to pay the surrender value to the trustee."

The judgment of the Superior Court is affirmed.