**BOUDREAU v. CHESLEY.**

No. 3820.

Circuit Court of Appeals, First Circuit.

May 5, 1943.

Henry E. Foley, of Boston, Mass., and Herbert E. Locke and Locke, Campbell & Reid, all of Augusta, Me., for appellant.

Frederick H. Tarr, of Gloucester, Mass. (Franklin R. Chesley, of Portland, Me., pro se), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Appellant Boudreau, as trustee in bankruptcy, brings this appeal under § 24 of the Bankruptcy Act, 11 U.S.C.A. § 47, from a judgment of the United States District Court for the District of Maine dismissing his petition in an ancillary proceeding in which he sought a summary order requiring appellee Franklin R. Chesley to turn over assets of the bankrupt, Daniel C. Mulloney.

Mulloney was president of the Federal National Bank of Boston when it closed on December 14, 1931. Nearly six years later, on June 1, 1937, Mulloney filed a voluntary petition in bankruptcy in the United States District Court for the District of Massachusetts, and on the same day was adjudged a bankrupt. On November 27, 1937, Mulloney brought a tort action for $3,000,000 damages in the Superior Court for Suffolk County, Massachusetts, through his attorneys, the said Chesley and Francis H. Farrell, against several Boston banks and their officers; the case was later removed to the federal court in Boston. In his schedule of assets filed in the bankruptcy court, Mulloney did not list this right of action. Mulloney obtained his discharge in bankruptcy on July 24, 1938.

On June 10, 1941, Mulloney's claim in the removed case was compromised and settled by the payment of $24,000 in the form of a certified check to the order of his attorney, Chesley, the appellee herein. Chesley retained $5,000 for legal services and turned over to Mulloney the balance of $19,000.

Within two months of this settlement, on July 29, 1941, a creditor of Mulloney petitioned the bankruptcy court to reopen the bankruptcy proceedings, which was done shortly thereafter, and appellant Boudreau was named trustee. Boudreau obtained leave from the bankruptcy court to institute the present ancillary proceedings against Chesley. His petition asked for a summary order requiring Chesley to turn over

to him the aforesaid $24,000, or to account for the proceeds thereof.

■ The court below dismissed the ancillary petition on alternative grounds, one of which, as we understand it, was that Mulloney's aforementioned right of action did not pass to his trustee in bankruptcy and become part of the bankrupt's estate. We affirm on this ground.

Section 70, sub. a(6) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(6), provides that the trustee in bankruptcy shall by operation of law be vested with the title of the bankrupt, as of the date of the filing of the petition, to all "rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property." Appellant contends that the right of action in question was for injury to Mulloney's "property", within the meaning of this provision of the Act. We do not agree.

Mulloney's declaration setting forth his cause of action is a lengthy document covering twenty-eight printed pages in the record. The burden of the allegations is that the defendants entered into a malicious conspiracy to ruin the plaintiff's reputation, to drive him out of the banking business and to deprive him of his livelihood; that to accomplish this purpose they committed various wrongful acts, such as making false representations to the comptroller of the currency and to others, alleging incompetency, dishonesty and criminal acts on Mulloney's part as president of the Federal National Bank of Boston, the circulation of false representations affecting the credit of the bank, so as to incite heavy withdrawals of deposits, and the exercise of various forms of economic coercion with a view to strangling the business of the bank. The last paragraph of the declaration reads as follows: "This conspiracy and the acts done in furtherance thereof were directed with the purpose in mind and to accomplish the result of eliminating the plaintiff from the banking business in Boston. The result as stated aforesaid could only be accomplished by closing the Federal National Bank. All this was accomplished. The plaintiff was damaged by the loss of his position as President of the Federal National Bank, which position paid him a salary of fifty thousand dollars ($50,000) a year. He was further damaged by the loss of his credit standing and his reputation for integrity and honest dealing. His repute and standing as a banker and financier was injured and damaged permanently. He was held up to contempt and ridicule in this community and his ability to gain for himself a livelihood practically ruined. All this was done to his great damage as more fully and specifically set forth in his writ."

■ Appellant describes Mulloney's cause of action as one for intentional interference with an advantageous business relationship, that is, his position as a salaried officer of the bank. This relationship, it is argued, was an interest of substance, an economic or financial interest; and hence an unprivileged interference therewith was an injury to "property" rather than an injury to an interest of personality. But we do not think that such an intangible interest is "property" in the context of § 70, sub. a(6) of the Bankruptcy Act. Cases like In re Gay, D.C.Mass.1910, 182 F. 260, and Tamm v. Ford Motor Co., 8 Cir., 1935, 80 F.2d 723, are readily distinguishable. They hold that a bankrupt's right of action in tort for deceit passes to his trustee in bankruptcy. But in such cases the bankrupt has suffered a loss of existing acquisitions, property which otherwise, but for the tort, would have been available to his creditors. For instance, in the Gay case, the bankrupt, prior to his bankruptcy, had been induced by fraud to apply his good money to the purchase of worthless bonds. Nor is Fazakerly v. E. Kahn's Sons Co., 5 Cir., 1935, 75 F.2d 110, in point. There it was held that a right of action for damages to the bankrupt's business by a conspiracy in violation of the antitrust acts passed to the trustee under § 70, sub. a(6). The business was property, saleable as a going concern—an existing acquisition of the bankrupt's, available to his creditors. The combination in restraint of trade impaired the value of the business, and the bankrupt's right of action properly went to the trustee for the benefit of the bankrupt's creditors.

■ The advantageous business relationship alleged to have been interfered with in the case at bar merely afforded Mulloney an opportunity to earn and acquire property in the future. The predominant injury charged in the declaration is the ruining of Mulloney's reputation, whereby his future earning capacity has been practically destroyed. But creditors are not entitled to share in the distribution of the capitalized value of the bankrupt's future earning capacity. As was said in Local Loan

Co. v. Hunt, 1934, 292 U.S. 234, 243, 54 S.Ct. 695, 698, 78 L.Ed. 1230, 93 A.L.R. 195: "The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence." And further (at page 245 of 292 U.S., at page 699 of 54 S.Ct., 78 L.Ed. 1230, 93 A.L.R. 195): "The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right."

The judgment of the District Court is affirmed, with costs to the appellee.