Lunnen *v.* Hunter et al., Appellants.

Argued December 2, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Robert M. Carson,* with him *Goethe Faust,* for appellants.

*Fred B. Trescher,* of *Kunkle, Trescher & Snyder,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1944:

M. E. Lunnen filed his bill against George D. Hunter and Edward H. Hunter, to set aside, as fraudulent, a conveyance of land for a nominal consideration,[1] made February 9, 1935, by George D. Hunter and his wife who held by the entireties. Mrs. Hunter died in November, 1936. The property had been conveyed to the husband and wife for a consideration of $2,600 by a deed dated and recorded May 25, 1920. On June 5, 1920, Hunter borrowed $1,800 from the Derry Building & Loan Association secured by a mortgage on the property dated May 25, 1920, executed by him and wife. This loan was repaid by the maturity of the building association stock and the mortgage was satisfied May 4, 1931.

The plaintiff, Lunnen, was in the grocery business and supplied Hunter and his family with groceries on credit. Beginning November 23, 1923, Hunter fell back in his payments on the account to the extent that when Lunnen brought this suit he had judgment against Hunter for $4,035.91. Hunter dealt with Lunnen from 1921 and paid his bills until November 23, 1923.

Hunter was a workman employed by a railroad company earning good wages.[2] Lunnen frequently requested payment of his bill but was put off by promises.

---

[1] Edith Grifana, a witness who was present at the delivery of the deed, testified that there passed ". . . quite a sum of money, but just the exact amount I don't recall." She also testified that she "wrote the deed" and that Mrs. Hunter, one of the grantors, informed her ". . . that Edward had always been very nice and loaned them money and they were going to sell this property to him."

[2] The 21st finding of fact is: "That during the year 1924 the defendant, George D. Hunter, earned and received from his employer the sum of $1859.94; during the year 1925 he earned and received the

The learned chancellor filed an adjudication holding that *C. I. T. Corporation v. Flint,* 333 Pa. 350, 5 A. 2d 126, was controlling and proposed a decree nisi dismissing the bill. After argument on exceptions, the court concluded that case was not controlling and entered a decree in plaintiff's favor annulling the deed and directing the Recorder to note the decree on the record. The appeal is from that decree.

We think the learned chancellor's first conclusion was right and the second wrong. It is of course true that a deed conveying an estate by the entireties may be the means of defrauding creditors and for that reason, may be set aside.[3] But there is nothing in this case to suggest that George Hunter was insolvent when he and his wife took title in 1920 or that there was anything fraudulent in the transaction.

In *C. I. T. Corporation v. Flint et al.,* 333 Pa. 350, at pages 354, 355 and 356, Mr. Justice HORACE STERN said: "The vital feature of the present case is that the property was not one in which Flint had an individualized interest. The title, legal and equitable, was in what may be regarded as a distinct legal entity, consisting of the unified personalities of the husband and wife, somewhat as if—although the analogy is, of course, a crude one— the spouses together constituted a corporate body. Ten-

---

sum of $1775.88; during the year 1926 he earned and received the sum of $1569.52; during the year 1927 he earned and received the sum of $1675.42; during the year 1928 he earned and received the sum of $1617.75; during the year 1929 he earned and received the sum of $1311.39; during the year 1930 he earned and received the sum of $1279.74; during the year 1931 he earned and received the sum of $504.54; during the year 1932 he earned and received the sum of $92.09; during the year 1933 he earned and received the sum of $582.31, and during the year 1934 he earned and received the sum of $1041.84."

[3] See *Shaver v. Mowry,* 262 Pa. 381, 105 A. 505; *Iscovitz v. Filderman,* 334 Pa. 585, 6 A. 2d 270; *Ferguson v. Jack,* 339 Pa. 166, 14 A. 2d 74.

ancy by entireties is a venerable institution of the common law; it rests upon instincts which form the very warp and woof of our domestic and social fabric. In such a tenancy each spouse is seized *per tout et non per my*. There is but one legal estate, which, by a long course of judicial decisions, has been buttressed against inroads attempted either by the parties themselves or by their individual creditors. Thus, a purchaser at sheriff's sale, under a judgment against the husband, does not acquire any right to possession, joint or exclusive, during the life of the wife. . . . Where there is a judgment against the husband, the surviving wife takes the property free of it, nor can a tenancy by entireties be changed into one in common by any act or deed of the parties so long as they remain the owners of the property and the marriage relation continues: . . . A trustee in bankruptcy of the husband is not entitled, during the life of the wife, to any part of the principal or income of the estate: . . . the husband and wife can convey the property free from judgments and the effect of bankruptcy proceedings against the husband and also from any contingent interest or ownership by the trustee in bankruptcy in the event of the husband surviving the wife. . . .

". . . As long as the title was held by entireties it was not an asset of Flint available for his creditors. They could not have attached it or his interest in it. It could have been conveyed by him and his wife so as to be forever beyond their reach. They could seize upon it only if, on the death of the wife, it had not been conveyed and the husband survived. He was not under a legal duty to see that this possible interest was preserved for the benefit of his creditors." See also *Murphey v. C. I. T. Corp.*, 347 Pa. 591, 594, 33 A. 2d 16.

In sustaining the exceptions to the adjudication, the court proceeded on the theory, if we understand it correctly, that though the deed to husband and wife was delivered and recorded May 25, 1920, title to the property did not vest in them until May 4, 1931, when the

mortgage was satisfied; that after November, 1923, Lunnen was a creditor and that George D. Hunter who furnished the consideration for the purchase and payment of the mortgage was insolvent. The difficulty with the theory is that title vested May 25, 1920, when the deed was delivered to them (*Chambley v. Rumbaugh,* 333 Pa. 319, 5 A. 2d 171) and not on May 4, 1931, when the mortgage was satisfied. The fact that they mortgaged the property in 1920 and satisfied the mortgage in 1931 did not divest them of the legal title during the interval, the mortgage being intended to furnish security for the loan made by the building association: *Kepler v. Kepler,* 330 Pa. 441, 199 A. 198. If the husband furnished the $600 down payment in 1920 and during the following years made the monthly building association payments until the satisfaction of the mortgage, that fact is immaterial in the circumstances shown: *Newhard v. Newhard,* 303 Pa. 299, 300, 154 A. 500.

In *Shaver v. Mowry,* 262 Pa. 381, 386, 105 A. 505, relied on below, the plaintiff filed a bill to reform a conveyance to husband and wife on the ground that title was taken by them in fraud of the husband's creditors. It appeared by the agreement of sale that the legal title did not pass to them until the consideration was fully paid, and that the ". . . debts of the husband were so disproportionate to his estate at the time of the transfer of the legal title as to make the taking of title in the name of the wife or by entireties such a hindering, delaying and defrauding of creditors as to be void from legal fraud." The rule applied was that if a grantor renders himself insolvent by transferring his property to himself and wife, the conveyance will be set aside as in fraud of his creditors. But the rule is not applicable to the present case because there is no evidence that Hunter was insolvent in 1920 when title by entireties vested; on the contrary, the evidence shows he was solvent then. He did not become delinquent in paying his current grocery bills until more than three years later. If George Hunter

was insolvent after 1923, that fact did not prevent his joining with his co-tenant in the deed of 1935. One of the incidents of such a title is that a creditor of a co-tenant may not recover out of the property or from their grantee, if they convey it, or from a non-debtor surviving if the debtor dies.

The plaintiff testified that he did not know the title was held by Hunter and wife, though their deed was recorded, and that he trusted Hunter's promises from time to time to pay. It may be that Hunter deceived him in making those promises, but Hunter's deception in this respect will not render the conveyance by both in 1935 fraudulent.

As the decree destroyed the interest of Edward H. Hunter, the grantee, we have treated the appeal as his alone.

Decree reversed and bill dismissed at plaintiff's costs.