In The Matter of S. F. BROTHERS COMPANY, Bankrupt.
No. 34092.

United States District Court
E. D. Michigan, S. D.
June 5, 1956.

See also 151 F.Supp. 157.

Walter I. McKenzie, Detroit, Mich., referee in bankruptcy.

Fred B. Collier, Royal Oak, Mich., for bankrupt.

Clarence L. Smith, Pontiac, Mich., for Collier.

Walter G. Wiseman, Detroit, Mich., trustee in bankruptcy.

Weiswasser, Jaffee, & Radner, Detroit, Mich., for trustee.

PICARD, District Judge.

This is a petition to review an order of the Referee in Bankruptcy and to set aside his certificate.

### Findings of Fact

On May 1, 1952 creditors of S. F. Brothers Company filed an involuntary petition in bankruptcy upon which an order of adjudication was entered Novem-

ber 17, 1952, after creditors had rejected a plan of arrangement proposed by bankrupt September 28, 1952.

One of several claims filed against the bankrupt was that of the First Michigan Cooperative Housing Association in the amount of $76,061.96. On the other hand, when the bankrupt filed its Schedule B–3, it stated therein that First Michigan was indebted to it approximately $200,000.

On May 12, 1952, after the involuntary petition in bankruptcy was filed but before adjudication, First Michigan commenced an accounting suit in the state court against bankrupt, Fred B. Collier, his wife, Diane Collier, Samuel Collier, Collier Brothers, Collier Lincoln Development Company, Nu-Basic Chemical Products Company, (the last three companies controlled by Fred B. Collier) and others whose identity is of no consequence in this matter. Thereupon the above individuals and entities, including the bankrupt, acting through Fred B. Collier, filed an answer and cross bill joining the Federal Housing Administration, Chase National Bank and others as parties defendants. Subsequently the case was removed to this court by the F.H.A.

The claim asserted by bankrupt against First Michigan in the civil suit and in the bankruptcy proceedings, as well as First Michigan's claim against bankrupt, arose in connection with the construction of a 144 unit cooperative housing project under Section 213 of the National Housing Act of 1950, 64 Stat. 54, 12 U.S.C.A. § 1715e. The bankrupt and First Michigan, for whom the project was to be built, entered a series of construction contracts that were never completely performed. As a result both claim a breach by the other and it is upon the mutual claims of breach, among other things, that the parties base their respective claims asserted herein.

On June 28, 1954, after some proceedings had been held in the civil action which involved First Michigan and bankrupt, the trustee filed a petition in the bankruptcy proceedings for authority to compromise the claims between the Cooperative and S. F. Brothers. Thereunder the former would withdraw its claim of $76,061.96 and the trustee would release First Michigan on the bankrupt's $214,903.53 counter claim. This amount varies with Mr. Collier's testimony depending upon what is credited either for or against the amount. In addition the trustee would release Royal Oak Township on a certain water and sewer tap-in contract entered into between the Township Board and S. F. Brothers Company. Notice thereof was given creditors, who after a hearing thereon, approved.

On August 6, 1954 a petition was filed by Fred B. Collier on behalf of the bankrupt for authorization to continue its civil action against First Michigan, which was opposed by both First Michigan and the trustee.

On October 29, a hearing was held by the Referee on the compromise at which time the bankrupt, through Collier, offered evidence to prove the merits of its claim as against that of First Michigan. The referee ruled that the bankrupt could not object to the compromise, refused to hear its testimony, denied petition for authorization to continue the civil suit and approved the compromise of claims. This court, 151 F.Supp. 150 entered an opinion reversing the Referee's ruling which had rejected Collier's testimony and pursuant to District Rule 29(d) (1) re-referred the matter to the referee with instructions to hear testimony offered on behalf of the bankrupt. This has been done and the compromise has again been approved and now comes before this court on petition for review of that order and to set aside the referee's certificate.

We have read the long transcript and hold that the referee's findings of fact are in conformity with that testimony.

As herein stated the bankrupt's claim against First Michigan and the latter's claim against the former arise out of a series of contracts between them for construction of the First Michigan Co-

operative Housing project. Cooperative states that the total amount payable to bankrupt on the contracts for on-site and off-site construction after deducting $136,000 (the amount claimed to have been paid for completion of work after bankrupt's alleged breach) was $1,352,-941.99. However, First Michigan states that the bankrupt actually received a total of $1,429,003.95 or an over-payment of $76,061.96. On the other hand, the bankrupt, through Fred B. Collier, (although the evidence is at times vague, conflicting, hearsay and uncertain) claims that the total contract price of $1,259,043.24 plus other items due bankrupt (architect's fee $41,238.20; Builder's fee $90,930; and land improvements $185,045) brings the total due S. F. Brothers Company to $1,525,907.34. It is contended that bankrupt received payments in amount of $1,367,634 which leaves the Cooperative indebted to bankrupt in the amount of $158,273.34 plus $1,830 for an over-draft of First Michigan which was covered by the bankrupt. Thus the bankrupt claims a total of $160,-103.34, although the figure is apparently balanced on an escalator. It is at times more—at other times less.

Without exception every item that goes to make up the respective claims of the parties is disputed, and there is evidently an intent at harassment by the petitioner in his effort to have all rights of S. F. Brothers Company, even against Federal Housing Administration liquidated in this one question. First Michigan claims that the architect's fee was not payable to bankrupt but to the architect whose signature appears on the contract as an agent of bankrupt. As to the builder's fee of $90,930, First Michigan alleges that this item was never approved by the F.H.A. and that the builder's fee that was approved was waived by Collier acting on behalf of the bankrupt and a letter written by Collier was introduced to prove the waiver. Here we are brought face to face with a paradox for while admitting that he wrote the letter, Collier denies that he had authority to waive the fee.

Also involved in the dispute is a controversy over certain tap-in rights to sewer and water mains. The sewers and mains were installed by bankrupt as part of its contract with First Michigan. However, in the installation it was necessary to install them past land owned by others than First Michigan. In 1951, shortly after such installation the bankrupt entered into an agreement with Royal Oak township, where the property is located, providing that the latter would collect a specified amount per square foot from adjacent landowners who made use of the mains and sewers. However, under the terms of the contract the township is not obligated to force payment by those landowners and since some of them have questioned the right of the township to make the charges the agreement is of very little value as an asset of the estate. Furthermore, First Michigan demanded as a condition of the compromise that the township be released from the agreement since the sewers and water mains were installed for the Cooperative under its contract with bankrupt.

In addition to the facts already set forth there are other factors that have an important bearing on the question of compromise. As examples: both parties claim that the other breached its contract, and First Michigan has charged in the bankruptcy proceedings and in the civil action that Collier, acting on behalf of the bankrupt at times and on behalf of First Michigan at others, was guilty of mis-handling of funds allocated for construction of the project. Finally there is the question of First Michigan's collectability in the event bankrupt should get a judgment in the civil action. So we agree with the referee's finding that it would be very difficult to collect from First Michigan if a judgment were rendered in bankrupt's favor.

This court is familiar with the Congressional Act under which First Michigan was organized. We fully realize that the Cooperative's ultimate source of income is the payments received from members and that under the Act these sums must be applied against construc-

tion costs, the payment of which is guaranteed by F.H.A.

### Conclusions of Law

The bankrupt, through Fred B. Collier, gives numerous reasons why this court should reverse the referee's approval of the compromise. But of all the reasons given only three require comment:

(a) The trustee has no authority to compromise a claim of the estate against a third party while an action to enforce that claim is pending in another court where the trustee has not intervened in that action.

(b) The trustee has no right to release an asset of the estate to one not a party to the proceedings.

(c) The circumstance does not justify a compromise of claims in this action.

We consider the contentions in the order stated.

 Section 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5) provides that upon appointment of a trustee for the administration of the estate of bankrupt, he becomes vested by operation of law with the title to all property of the bankrupt, including rights of action, as of the date of filing of the petition in bankruptcy. Insofar as actions that were pending prior to the time the petition was filed the trustee may intervene, discontinue the suit, permit its prosecution or otherwise dispose of it as he sees fit. Sherman v. Buckley, 2 Cir., 119 F.2d 280. But in the case at bar the bankrupt's counterclaim against First Michigan was not filed against First Michigan until after the petition in bankruptcy was filed. In Meyer v. Fleming, 327 U.S. 161, at page 169, 66 S. Ct. 382, at page 387, 90 L.Ed. 595 where the court was dealing with a re-organization proceedings, after stating that the same rules applicable in bankruptcy were controlling, the court said—

> "If the claim were to be filed after the petition for the reorganization * * * had been approved, it could be done only with the consent of the

bankruptcy court. For it has exclusive authority to determine how causes of action which have become a part of the bankruptcy estate shall be enforced."

The court then cited Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815. In view of the foregoing language of the Supreme Court and the above provision of the Bankruptcy Act, we believe the fact that a suit between First Michigan and bankrupt is pending in another court is no bar to the compromise, particularly since it is this court and we are familiar with the several issues advanced and can appreciate the full significance of the evidence as presented. We are aware of the fact that where the trustee has abandoned or disclaimed property title thereto reverts to the bankrupt. See Schram v. Tobias, D.C., 40 F.Supp. 470; In re Miners Mills Coal Min. Co., D.C., 30 F. Supp. 597. But under the facts of this case we do not feel that there has been a disclaimer. The trustee opposed the bankrupt's petition for authority to continue the suit as long as two years ago and submitted a compromise to the referee for his approval. This clearly negatives any supposed intent of the trustee to abandon the claim.

 The contention is made that the trustee in releasing Royal Oak township from its obligation under its contract with bankrupt is giving away a valuable asset of the estate to one not a party to the proceedings without consideration. We do not agree with either contention. First, Section 27 of the Bankruptcy Act, 11 U.S.C.A. § 50 authorizes the trustee, with the approval of the court, to compromise any controversy arising in the administration of the estate. If the contract between the bankrupt and Royal Oak is to be enforced, some action is necessary on the part of the trustee which no doubt would be an expense to the estate. The referee has some control over such action by the trustee. See Scott v. Jones, 10 Cir., 118 F.2d 30. Certainly this is a controversy arising in the ad-

ministration of the estate. It must also be remembered that to some extent First Michigan questions the right of the township to require adjacent landowners to pay for connections into this (First Michigan's) sewer and water mains, and has demanded release of this alleged right as a condition of compromising its claim with the bankrupt. This is an alleged benefit surrendered by First Michigan.

We come now to the contention that the facts of this case do not justify approval of the compromise. A compromise is addressed to the sound discretion of the referee and his approval thereof should not be disturbed except for clear error or for abuse of discretion. In re Truscott Boat & Dock Co., D.C., 92 F.Supp. 430. We have carefully considered all the testimony introduced in relation to the compromise and we are unable to say that there is clear error or abuse of discretion by the referee. In fact there are times when this court in attempting to follow Mr. Collier's testimony was bewildered particularly by the gyrations of the fortunes of the several fostered companies composing the Collier interests. So in reaching this conclusion we have considered many factors and we are firmly convinced that compromise of the claims is in the best interest of the estate.

We are not unmindful of Collier's contentions that the referee made findings which were not supported by any evidence. We disagree and regard many of Collier's objections as mere technicalities. As stated In Re Kansas City Journal-Post Co., 8 Cir., 144 F.2d 816, where it appears that the spirit of the Act and General Orders in Bankruptcy have been duly observed, any objection should amount to more than mere technicalities and should go to the merits of the proceeding.

The referee is affirmed.

