Charles **W. PATTON**, Jr.

v.

**FIDELITY–PHILADELPHIA TRUST CO.**

Civ. A. No. 29182.

United States District Court
E. D. Pennsylvania.

Oct. 27, 1965.

**1016**

Charles M. Solomon, Franklin A. Wurman and Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for petitioner.

Morris M. Wexler, Meyer E. Maurer and Wexler, Mulder & Weisman, Philadelphia, Pa., for respondent.

DAVIS, District Judge.

The plaintiff, a citizen of Colorado, instituted this diversity action against the defendant bank for damages arising from the breach of an oral contract. The suit proceeded to trial but after the plaintiff rested his case, the defendant moved for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. After full argument out of the presence of the jury, the court granted the defendant's motion and announced that it would file an opinion setting forth the reasons for its decision. For the purposes of this motion, there was no dispute as to the plaintiff's factual allegations.

The plaintiff was the owner and operator of a machine shop in Haverford, Pennsylvania, and was indebted to the defendant bank in the amount of $94,-804.55 by reason of four loans secured by accounts receivable, equipment and life insurance policies. After plaintiff had defaulted on an installment on his equipment loan on April 26, 1955, he and the defendant bank entered into an oral agreement that if plaintiff would terminate his business operation and proceed to liquidate it in an orderly manner, the defendant would refrain from seizing the collateral. In compliance with the terms of the oral agreement, the plaintiff began to make certain arrangements for liquidation; however, on April 29, 1955, defendant bank took possession of the plaintiff's physical assets in violation of the oral contract and sold them for $35,-500. Subsequently, the bank demanded and received payment of the cash surrender value of plaintiff's paid-up policies of life, endowment and retirement insurance in the amount of $63,910.20. The plaintiff in the meantime had been adjudicated a bankrupt in proceedings commenced May 3, 1955 in the Eastern District of Pennsylvania.

The plaintiff claimed as damages as a result of the bank's breach of contract the following: (1) $71,924.82 representing the difference between the alleged market value of his physical assets of $107,424.82 and the actual sale price of $35,500; (2) $106,959, representing the replacement value of his insurance policies surrendered by the bank; and (3) $100,000 representing the damage to his credit and reputation from being forced

into bankruptcy by defendant bank as a result of its breach of contract.

While accepting the plaintiff's recitation of the facts for the purposes of this motion, the defendant asserts that under the circumstances of this case, the law denies the plaintiff the right to recover on any of the three elements of damages.

## I.

 The defendant argues first of all that the plaintiff may not recover the difference between the alleged market value of the physical assets and the amount for which it was actually sold because any rights that the plaintiff might have had for such damages became vested in the trustee in bankruptcy as the date of the filing of the petition in bankruptcy.

Section 70, sub. a of the Bankruptcy Act, 11 U.S.C. § 110, sub. a, provides *inter alia*:

"The trustee * * * shall * * * be vested by operation of law with the title of the bankrupt *as of the date of the filing of the petition* * * *, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (6) *rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property.* (Emphasis added.)

The complaint avers that the plaintiff is entitled to recover the difference between the fair market value of his machinery and other tangible property and the price for which it was sold by the defendant bank "by reason of the unlawful seizure and sale of plaintiff's assets." From these words, and from the complaint as a whole, it appears that this element of damages arises because of the breach of oral contract and the unlawful taking of his property, and thus comes squarely within the provision of § 70, sub. a(6) of the Bankruptcy Act above cited which passed the plaintiff's chose in action to the trustee in bankruptcy

as of the date of the filing of the petition. See, 4 Collier, Bankruptcy § 70.28(5).

Tamm v. Ford Motor Co., 80 F.2d 723 (8th Cir. 1935), was a case similar to the instant suit. There the plaintiff brought an action against the defendant alleging that it had induced the plaintiff to enter into a contract by fraud and misrepresentation resulting in the plaintiff's becoming insolvent and being forced into bankruptcy. The Court held that the cause of action came within the provisions of § 70 sub. a (6), first because the action was in contract and secondly because the word "injury" in the phrase "injury to his property" encompassed "an actionable wrong", not just physical harm. In reaching its conclusion that the cause of action had vested in the trustee in bankruptcy, the court stated:

"Surely Congress never intended that a bankrupt could lose his property to the extent of utter insolvency as here pleaded, and then go into bankruptcy for an immunity bath, and then emerge freed from his creditors and vested with all he had lost. For if the trustee has no title and therefore no right to sue, obviously, the bankrupt retains the title to the chose and may sue * * *."

There is no contention in the instant case that the trustee abandoned or rejected this cause of action so as to revest title in the plaintiff. See Brown v. O'Keefe, 300 U.S. 598, 602–603, 57 S.Ct. 543, 81 L.Ed. 827 (1937); Colson v. Montiel, 226 F.2d 614, 611–618 (8th Cir. 1955); United States for Use and Benefit of Allen Const. Corp. v. Verrier, 179 F.Supp. 336, 343 (D.Me.1959); In re S. F. Brothers Co., 151 F.Supp. 153, 156 (E.D.Mich.1956), aff'd sub nom. S. F. Brothers Co. v. Wiseman, 244 F.2d 73 (6th Cir. 1957). In fact, by an Order dated January 16, 1956, the referee, pursuant to § 27 of the Bankruptcy Act, 11 U.S.C. § 50, authorized the trustee to settle all claims against the defendant bank. The release, which was concluded on January 23, 1956, read in part:

" * * * the Trustee in Bankruptcy * * * does hereby remise,

release, and forever discharge the said * * * [bank] * * *, its successors and assigns, of and from each and every claim, demand and cause of action whatsoever, whether at law or equity, which the said * * * Trustee in Bankruptcy * * * or said bankruptcy estate, now has or ever had, or which his successor or successors, as Trustee or Trustees, ever can have against the said * * * [bank] * * * arising out of any act, transaction, matter or thing, down to the date of these presents."

It is clear that the plaintiff may not bring an action for the extra price that the defendant bank should have received for the debtor's physical assets. All such rights passed to the trustee in bankruptcy pursuant to § 70, sub. a (6) of the Bankruptcy Act, and the latter entered into a valid settlement. Constant v. Kulukundis, 125 F.Supp. 305 (S.D.N.Y. 1954). Since the plaintiff had no rights, the defendant's motion for a directed verdict is granted as to this issue.

## II.

The defendant also contends that the plaintiff may not recover the replacement value of the insurance policies which the defendant bank held as collateral and cashed in for their then cash surrender value since the policies were not specifically claimed as exempt property under Schedule B–5 and therefore any rights to them belonged to the Trustee in Bankruptcy.

Section 6 of the Bankruptcy Act, 11 U.S.C. § 24, generally provides that exemptions allowed to bankrupts by the law of the state in which the bankrupt has his domicile will not be affected by the federal statute.[1] However, further requirements relating to exemptions are set forth in other provisions of this Act. Under § 7 sub. a(8), the bankrupt is obligated to prepare a detailed schedule of his property, creditors, and claims including "a claim for such exemptions as he may be entitled to." In addition, § 47, sub. a (6) reads:

"The trustee shall * * * (6) set apart the bankrupts' exemptions allowed by law, *if claimed*, and report the items and estimated value thereof to the courts as soon as practicable after their appointment." (Emphasis added.)

The Supreme Court has promulgated a number of forms to implement these and other provisions of the Bankruptcy Act. Form 1, Schedule B–5, 11 U.S.C. foll. § 53 calls for the listing of "Property claimed as exempt from the operation of the act of Congress relating to bankruptcy." The Schedule itself is divided into two sections: one requests a listing of "Property claimed to be exempt by the laws of the United States * * *" and the other asks for "Property claimed to be exempt by State law * * *." Under the former, the plaintiff listed his federal statutory bankrupt exemption of $300 while under the latter he listed only his home which was owned by the plaintiff and his wife as tenants by the entireties and thus exempt under Pennsylvania law. Lunnen v. Hunter, 348 Pa. 402, 35 A.2d 292 (1944). He never claimed any insurance policies at all in that schedule although they too were exempt under State law. Pa.Stat.Ann. tit. 40, §§ 515–517.

The defendant asserts that the failure of the plaintiff to follow the statutory mandate and to claim his insurance policies as exempt property precludes his recovery of damages involving such property. The plaintiff on the other hand argues that the exemptions under the Bankruptcy Act are self-executing and that it is not essential to claim them specifically in the schedule or in any other manner. To support this view, the plaintiff relies on In re French, 231 F. 255 (D.C.

1. 11 U.S.C. § 24 reads: "The provisions of this title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition.

N.D.N.Y.1916) which held that since state law exempted certain stoves from seizure, they remained "unqualifiedly exempt" and the bankrupt did not have to assert a special claim to them under the federal statute. Joseph v. New York Life Insurance, 308 Pa. 460, 162 A. 441 (1932) cites French and is in accord that a debtor does not have to claim his life insurance policies because they always remained vested in the bankrupt. While these holdings appear to support the plaintiff's contention, they have been adversely criticized and are no longer tenable under § 47, sub. a (6) of the Bankruptcy Act which requires the trustee in bankruptcy to set aside the bankrupt's exemptions "if claimed". 1 Collier Bankruptcy § 6.19. The language, "if claimed" did not appear in the original Act of July 1, 1898, but was added to the amended Act of 1938. Consequently, the cases cited by the plaintiff are not in point since they construed a statute which at a subsequent date was significantly amended. Furthermore, even if these two cases may have represented the law as it existed prior to the amendments of 1938, the addition of the term "if claimed" clearly indicates that an affirmative assertion is necessary and that no exemption is self-executing even though the opposite might be the case under state law. State law cannot override the words and intent of a federal statute and indeed is only incorporated here to the extent that there is no conflict between the two. While the question as to what is exempt is governed by state law incorporated into the federal statute, the procedure by which the exemption is realized is governed solely by the Bankruptcy Act without looking to state law.

There are a number of cases which hold that the bankrupt must assert his exemption if he is to realize it. Novak v. O'Neal, 201 F.2d 227 (5th Cir. 1953); Gardner v. Johnson, 195 F.2d 717 (9th Cir. 1952); In re: Rogers, 45 F.Supp. 297 (E.D.N.Y.1942); In re: Ragozzino, 38 F.Supp. 53 (E.D.N.Y.1941); In re: Gunzberger, 268 F. 673 (D.C.M.D.Pa. 1920); In re Gerber, 186 F. 693 (9 Cir. 1911); See also 1 Collier, Bankruptcy § 6.19.

In Gardner v. Johnson, 195 F.2d 717 (9th Cir. 1952), the question arose as to whether the bankrupt was entitled to a homestead exemption in the City of Los Angeles when she had written "none" on the B–5 Schedule for exempt property. The trial court held that since the property was exempt under California law, it never passed to the trustee in bankruptcy, but remained vested in the bankrupt. The Court of Appeals reversed, holding that the Bankruptcy Act set forth the procedure for claiming exemptions and that failure to list it in the relevant schedule constituted a waiver. Citing an older case, the court declared at page 719 of 195 F.2d:

" * * * that the forms prescribed by the Supreme Court pursuant to the [Bankruptcy] Act required the bankrupt to claim his exemptions in a specific manner, and that the Act provided for a precise mode of setting apart and awarding such claims of exemption. * * * The bankrupt had lost and abandoned any right to a homestead exemption by a failure to schedule and list the same in the manner required by the general orders in bankruptcy."

The plaintiff emphasizes the fact that his insurance policies were listed in the debtor's petition on Schedule B–3 which is captioned "Choses in Action". Under the subheading "Policies of Insurance", plaintiff listed the numbers of his insurance policies, their cash value, the name of the insurance company, the fact that they were assigned to the bank to secure a loan, and the sentence "Mary Elaine Patton is the contingent beneficiary". However, the plaintiff cites no authority for the novel proposition that just because the policies are mentioned somewhere, all interested parties are thereby put on notice that the policies are claimed as exempt property. This would be a very deceptive practice and one which this court refuses to sanction. Even if an interested and knowledgable person looked at Schedule B–3 and the

statement therein, he would not know that these policies are exempt since the Pennsylvania statute does not free all insurance from the grasp of the creditor.[2] In addition, it should be noted that in the debtor's petition the plaintiff treated his home quite differently from the insurance policies. The home is listed on the Schedule B–5 for exemptions as well as recorded on Schedule B–1, captioned "Statement of All Property of Bankrupt-Real Estate." Here the plaintiff not only recorded the address but went further and stated that it was held by his wife and him as tenants by the entireties and that "Debtor has no interest in premises since this property is exempt under applicable state laws." It would be natural to assume that if the plaintiff was careful enough to list his real estate twice and to specify that it was exempt at each place, he would have been consistent and followed the same pattern with respect to the insurance policies if he were claiming them as exempt property. Under the circumstances of this case especially, the court cannot conclude that the plaintiff claimed his exemptions as required by the pertinent statutes and general orders pursuant thereto. The defendant's motion for a directed verdict under Rule 50 is granted as to the element of damages involving the insurance policies.

### III.

■ Finally the defendant argues that the plaintiff cannot recover damages for injury to his credit and reputation on the ground that here also all rights passed to the Trustee in Bankruptcy.

2. Pa.Stat.Ann. tit. 40, §§ 515–517.

3. § 70, sub. a(5), 11 U.S.C. § 110, sub. a(5); The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition * * * except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could

The complaint which is not entirely clear in characterizing this element of damages, reads as follows:

"By reason of the defendant's breach of agreement, plaintiff was deprived of the value of his assets with which to pay other creditors, who filed a Petition in Bankruptcy against plaintiff on or about May 3, 1955, thereby injuring plaintiff's credit and reputation, for which plaintiff claims damages in the amount of $100,000.00."

If the plaintiff is alleging an action for libel or slander, it is plain that the one year Pennsylvania Statute of Limitations has run since this complaint was filed in 1961 or five years after the cause of action arose. See Pa.Stat.Ann. tit. 12 §§ 31–32.

If the gravamen of the action "arises upon a contract," it vested in the trustee in bankruptcy pursuant to § 70, sub. a (6), and the plaintiff no longer has a cause of action. This interpretation seems to be the correct one because the plaintiff claims the damage to his credit and reputation "by reason of defendant's breach of agreement." The essential element here, by the plaintiff's own admission, is a contractual one which therefore passed to the trustee on the filing of the petition in bankruptcy. When the trustee signed the release with the defendant as to its claims against the latter this issue was settled.

The plaintiff relies on Boudreau v. Chesley, 135 F.2d 623 (1st Cir. 1943) for the proposition that an action for injury to one's reputation is personal in nature and remains vested in the bankrupt pursuant to § 70, sub. a (5) of the Bankruptcy Act.[3] This case involved a bank pres-

by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: *Provided,* That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process.

ident who had filed a voluntary petition in bankruptcy and was adjudged a bankrupt. He subsequently brought suit against several Boston banks and their officers on the ground that defendants had maliciously conspired to drive him out of the banking business and to accomplish this aim, had made false representations and had exercised various forms of economic coercion. He claimed that his credit standing and his reputation for integrity were severely damaged.

This case differs from the instant action in that the gravamen of the complaint in Boudreau v. Chesley did not, so far as the opinion relates, involve a breach of contract between plaintiff and defendant. The essence of the action was a tortious conspiracy which was certainly not alleged in the present case.

Constant v. Kulukundis, 125 F.Supp. 305 (S.D.N.Y.1954) is very similar to the action now before the court. The defendant sought summary judgment in an action in which plaintiff claimed damages as a result of a conspiracy to defraud. Among other allegations, the plaintiff declared that through false representations he was induced to assign his stock interest in a corporation to the defendant. While granting the summary judgment because of the running of the statute of limitations, the court emphatically stated that this was not a personal action that remained vested in the debtor. It was at a loss, as the court is here, to bring the cause of action within one of the exceptions of § 70, sub. a (5). Apparently, the complaint there was somewhat nebulous in characterizing the claim as the complaint is here. The opinion added that the essence of the damage was really to property and not to the "feelings or person".

In Tamm v. Ford, 80 F.2d 723 (8th Cir. 1935) where the trustee of a bankrupt car dealer alleged that the defendant had caused the car dealer's bankruptcy through the breach of a contract which the defendant had fraudulently induced

him to make, the court admitted its difficulty in determining whether the case was ex contractu or ex delicto and consequently whether the action passed to the trustee. After careful consideration it decided that the gravamen of the complaint was contractual, declaring:

" * * * the bankrupt had a contract with appellee whereby in reliance on the agreements made by appellee the bankrupt lost well-nigh all of its property, became insolvent, and was forced into bankruptcy. It is beside the present point under discussion that the bankrupt was * * * induced to enter into this contract by fraud and misrepresentations. The inducements and false statements and misrepresentations merely went to the entering into the contract * * * But the thing in the last analysis which plaintiff is endeavoring to recover is damages, for the failure of appellee to perform its contract, in a sum sufficient to recoup the bankrupt for the loss which appellee's breach of its agreements worked on the bankrupt's estate."

In the instant action, no independent fraud or tortious conduct is alleged; on the contrary, the wrong stems from a breach of the oral contract between the plaintiff and defendant bank. It is evident that the cause of action relating to the injury to the plaintiff's credit and reputation "by reason of defendant's breach of agreement" is contractual in nature and passed to the trustee in bankruptcy pursuant to § 70, sub, a (6) of the Bankruptcy Act. As a result, the court must also enter a directed verdict for the defendant under Rule 50 as to this third and final element of damages.

## ORDER

And now this 28th day of October 1965, pursuant to the Directed Verdict entered for the Defendant as to all issues in the above captioned action on September 29, 1965, judgment is hereby entered for the Defendant.