775 F.2d 202
 13 Collier Bankr.Cas.2d 1047, 13 Bankr.Ct.Dec. 991,
Bankr. L. Rep. P 70,808
 Jerry PAYNE and Deborah Payne, Debtors-Appellants,
v.
Charles R. WOOD, Jr., Plaintiff-Appellee.
 No. 84-2565.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 1, 1985.
Decided Oct. 18, 1985.
 
 George R. Ripplinger, Jr., Ripplinger, Dixon, Hoffman & Ver Steegh, Belleville, Ill., for debtors-appellants.
 Charlene E. Novick, Carr, Korein, Kunin, Schlichter & Brennan, East St. Louis, Ill., for plaintiff-appellee.
 Before CUDAHY and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.
 EASTERBROOK, Circuit Judge.
 
 
 1
 In 1981 Jerry and Deborah Payne made two lists of their household possessions. The first list recited that they owned a 9-year-old refrigerator worth $25, an 8-year-old stereo worth $50, furniture worth $615, household dishes and small appliances worth $100, clothing worth $125, a color television set worth $250, no books, no firearms or sports equipment, and no insurance. The aggregate value of personal property on this list was $1,205, including the clothing. The second list recited that they had two year-old stereo systems and some additional speakers, a 3-year-old refrigerator, three TV sets, a 2-year-old air conditioner, a 3-year-old encyclopedia, a pistol, a bow, and quite a bit more. The Paynes filed the first list with a bankruptcy court in August 1981. They presented the second list to the Country Mutual Insurance Co. in December 1981, after their house burned down. Country Mutual sent an investigator and decided that the property was worth $17,389.47. The Paynes want the money. So does the bankruptcy trustee.
 
 
 2
 The bankruptcy court first apportioned to the Paynes the $3,664 in proceeds attributable to property they acquired after their discharge in bankruptcy. Further steps were complicated by the nature of the insurance policy, which compensated the Paynes for the original cost of the property less depreciation, rather than for the price for which the used property could have been sold. The Paynes' policy also allowed them to replace destroyed items within six months, in which case Country Mutual would pay the full replacement cost.
 
 
 3
 The bankruptcy judge divided the Paynes' property into three classes. Proceeds from items that had been listed (for example, one color TV set) would go to the Paynes. Proceeds from durable goods that had not been listed (for example, the air conditioner) would go to the trustee. Proceeds from goods that had been listed by category (the furniture, dishes, and clothing) would go to the Paynes in the amount they had listed as the value of these goods, then to the trustee to the extent Country Mutual paid more. The Paynes thus received $665 for the refrigerator, $359.20 for one color TV, $125 for clothing, $615 for furniture, and so on. The total was $6,114.29 to the Paynes, the balance to the trustee. The district court affirmed. Only the Paynes appeal.
 
 
 4
 Under the Bankruptcy Act all property of the debtor becomes part of the estate available to satisfy the creditors' claims. 11 U.S.C. Sec. 541(a). The debtor then may remove some of the property by claiming exemptions under 11 U.S.C. Sec. 522(b). Anything properly exempted passes through bankruptcy; the rest goes to the creditors. The debtor must file "a list of property that the debtor claims as exempt", and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. Sec. 522(l ). If the debtor does not claim an exemption with respect to particular property, the rule of inclusion stated in Sec. 541 controls, and the property goes to the creditors. In re Friedrich, 100 F. 284 (7th Cir.1900); Gardner v. Johnson, 195 F.2d 717 (9th Cir.1952); In re Guerrero, 30 B.R. 463 (N.D.Ind.1983); In re Elliott, 31 B.R. 33 (Bankr.S.D.Ohio 1983).[1] Once property enters the estate, it does not matter whether the property changes form. 11 U.S.C. Sec. 541(a)(6); H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. If the debtor sells a piece of the creditors' property, he must turn over the proceeds; here, to the extent the contents of the house belonged to the creditors, they get the proceeds.
 
 
 5
 Our initial inquiry therefore is: What did the Paynes' list remove from the estate? Illinois has exercised its right under Sec. 522(b)(1) to establish the nature and maximum amount of exemptions. The rule in force today permits a debtor to keep "necessary wearing apparel, bible, school books, and family pictures" without regard to value, plus the "debtor's equity interest, not to exceed $2,000 in value, in any other property." Ill.Rev.Stat. ch. 110 Secs. 12-1001(a) and (b). Illinois law also allows exemptions concerning vehicles and homes, see In re Barker, 768 F.2d 191, 194-95 (7th Cir.1985), that are not pertinent here. The Paynes claimed their exemption for clothing and $1,080 worth of other property, most lumped under the headings "furniture" ($615) and "household dishes and small appliances" ($100). A close reading shows that they were not claiming anything else except a new color TV and four appliances 8-9 years old: a washer, a dryer, a refrigerator, and a stereo system.[2] Because the list did not include any other appliances, books, sports equipment, and the like, all this became part of the estate.
 
 
 6
 With respect to the property in the estate, the difference between market value insurance and replacement value insurance is a distraction. The fire turned physical assets of the estate into insurance proceeds; the trustee gets whatever these proceeds happen to be. Similarly, the Paynes get whatever the proceeds happen to be for the property that was exempted. The Paynes argue that they should be entitled to the proceeds on all property that could have been put within the limit in Illinois, but this is not so.[3] The partition between debtors and estate depends on what was actually exempted, not what could have been exempted.[4]
 
 
 7
 The Paynes have not tried to amend their list of exemptions, and although amendments before discharge are liberally allowed it is most unlikely that the Paynes would be permitted to amend. The Paynes' omissions from the initial list suggest that they meant to hide assets if they could get away with it; Jerry Payne testified that he omitted the encyclopedia, for example, because "[i]f they come in on it later you have to release it." The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive. The omission of assets may be a good reason to deny or revoke a discharge. 11 U.S.C. Sec. 727; Thomas H. Jackson, The Fresh-Start Policy in Bankruptcy Law, 98 Harv.L.Rev. 1393, 1440-46 (1985). When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion. So, here, it is too late for the Paynes to start over and ask the court to apportion the proceeds as if they had filed a complete schedule in the first instance.[5] See Stewart v. Ganey, 116 F.2d 1010 (5th Cir.1940); In re Elliott, supra; In re Settle, 14 B.R. 31 (Bankr.D.N.H.1981); In re Dorricott, 5 B.R. 192 (Bankr.N.D.Ohio 1980).
 
 
 8
 Although the trustee receives the full proceeds for property that was not claimed as exempt--and which therefore never left the estate--the question remains just what was claimed as exempt. The claim of "clothing" worth $125 exempts all of the Paynes' clothing. Illinois law allows the exemption of "necessary wearing apparel" without regard to value. The trustee does not say that any of the Paynes' clothing is not "necessary," cf. In re Deacon, 27 F.Supp. 296 (S.D.Ill.1939), so no clothing is left in the estate. The bankruptcy court nonetheless gave the Paynes only $125 in proceeds for clothing, leaving the rest for the estate. It should have given the Paynes the full proceeds for their clothing, for the same reason it gave the trustee the full proceeds for the air conditioner. The proceeds go to the owner of the property.
 
 
 9
 The treatment of "furniture" and "dishes and small appliances" is more difficult. A debtor may not exempt all property in these categories; these count against the limit, so a general listing of "furniture" does not necessarily keep all furniture out of the estate. The treatment of these claims depends in part on how specific a claim of exemption must be.
 
 
 10
 It would be silly to require a debtor to itemize every dish and fork, even to list the electric knife separately from the crock pot. The necessary degree of specificity varies with the value of separate listings. The lower the value of the items, the less reason to identify each. But it does not follow that a generic listing always encompasses the low-value items within a category. The requirement that the debtor list the property serves at least two functions. One is to settle claims of title, so that on the day of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge. Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme. Cf. In re Friedrich, supra, 100 F. at 286 ("much abuse of the beneficent law allowing exemptions might arise if, with respect to a general stock of goods, the debtor should be permitted to place upon selected articles his own estimate of value").
 
 
 11
 A court may not let the debtor be the sole estimator of market value, which would be the outcome of unrestrained categorical assertions of exemption. At the same time, a court may not announce a specific rule such as: "List separately each item that a trustee might think could be sold for $25 or more." When writing the bankruptcy code Congress had to choose between a specific set of rules, such as a $25 line of demarcation, and a more general standard. The code selects a standard rather than a rule, and a court may not reverse this choice just because the rule seems more easily administrable. The degree of specificity must be left in the charge of those who draft the bankruptcy schedules, and so far they have allowed many items to be lumped together for a single valuation. Cf. Burke v. Guarantee Title & Trust Co., 134 F. 562 (3d Cir.1905) (it is not necessary to itemize exempted property separately from the bankruptcy schedule).
 
 
 12
 The aggregation of "furniture" and "dishes and small appliances" therefore ordinarily would be enough to exempt all items in these categories. Yet ordinarily is not always. The debtor must furnish enough information to put the trustee on notice of the wisdom of further inquiry. The trustee, who protects the interests of the creditors, then may make a calculation of the benefits of more detailed listing in each case, and he may ask the bankruptcy court to require the debtor to do more. If a bankruptcy schedule should list $10,000 in new appliances and only $615 in furniture, the trustee might be startled by the imbalance and make further inquiry. When the schedule shows only elderly appliances of minimal value, a small claim for furniture, dishes, and small appliances does not invite inquiry. When the debtor's listing withholds information that the trustee may find helpful in deciding to make such a request, a categorical claim of exemption should not be honored beyond the value the debtor attached to the category. After all, property passes to the estate automatically, and it is the debtor's burden to make out the claim of exemption with adequate specificity.
 
 
 13
 The Paynes' list did not put the trustee on notice. The schedule contained only old appliances and one new TV; nothing would have caught the trustee's eye. A more accurate listing might have provoked investigation. The Paynes concede that even by their methods of valuation an accurate schedule would have revealed more than $2,000 of assets and that the trustee might well have found it worthwhile to take and sell several items (see also note 3, supra ). By filing an incomplete form, the Paynes forestalled an inquiry they knew lay in store. The legal result is a limitation on the value they may receive for assets in these categories.
 
 
 14
 Rough justice, no doubt. Even if all of the Paynes' furniture, dishes, and small appliances were worth no more than $715 in August 1981, their insurance policy would have paid more. But any other principle would encourage the making of excessively general claims in the hope that if omissions should be discovered, the debtors could argue that the omitted property was "really" in some broadly worded category. The roughness of this justice does not always hurt debtors, either. The omissions from their schedule of assets might have been grounds to set aside the discharge; the trustee settled for a lesser remedy. The bankruptcy court might have concluded that the large appliances had been misdescribed (all were newer than the schedule asserted) and reduced the payments on that account. And the bankruptcy court might have decided that the policy itself is an asset of the estate, which would have directed all of the proceeds to the trustee. The policy was property of the debtors, but they did not list it among the items for which they claimed exemption. If the property was insured in December 1981 because of a premium paid before August 1981, the trustee might have claimed the policy.[6] Other cases have held that the failure to list a policy of insurance means that the trustee gets the proceeds. Patton v. Fidelity-Philadelphia Trust Co., 246 F.Supp. 1015, 1018-20 (E.D.Pa.1965); In re Rogers, 45 F.Supp. 297 (E.D.N.Y.1942); In re Elliott, supra; In re Howard, 6 B.R. 220 (Bankr.S.D.Ohio 1980).
 
 
 15
 No bankrupt will itemize every possession; none should. Every bankrupt must do enough itemizing to enable the trustee to determine whether to investigate further; the Paynes did not. It was not possible in this case--it will not be possible in any other--to determine with assurance which items passed through bankruptcy as exempt. Because there must be imprecision in any case of this sort, we do not disturb the bankruptcy judge's decision to limit the recovery to $715 for furniture, dishes, and small appliances. We remand this case with instructions to determine how much of the insurance proceeds is attributable to clothing and to award that to the Paynes. The judgment is affirmed in all other respects. Costs to appellee.
 
 
 16
 CUDAHY, Circuit Judge, dissenting in part.
 
 
 17
 I agree that honest reporting is very important for the successful operation of the bankruptcy system. But the majority seems to have lost sight of the fact that the purpose of insurance is to permit replacement of the articles destroyed. Had there been no fire, the bankrupts would in all probability have been able to continue housekeeping with their existing furniture, dishes and small appliances. Now they must somehow replace these items for $715 or eat with their fingers off the floor.
 
 
 18
 I cannot accept the speculation of the majority that a more accurate listing of major appliances would have led the trustee to doubt the value placed on furniture, dishes and small appliances. It is not fair to engage in guesswork which simply results in a windfall to the creditors because the small household goods burned up in a fire. The bankrupts, not the creditors, had the foresight to get the insurance and to pay the premiums. Since there is no plausible theory under which the debtors are not entitled to the furniture, dishes and small appliances, they are entitled to the funds to replace those essential household items.[1] They are certainly entitled to this much of a "fresh start." I therefore respectfully dissent as to the matters discussed.[2]
 
 
 
 [1]
 Friedrich and Gardner interpret the 1898 act rather than the current version, but the mechanics of exemption, as opposed to the substance of what may be exempted, were not changed in the 1978 revisions
 
 
 [2]
 Bankruptcy schedule B-2 requires debtors to list all their personal property. The Paynes itemized five large appliances and $100 for "dishes and small appliances;" the residual claim is for "furniture," so the list claims no other large appliance. One line item on schedule B-2 calls for the value of "wearing apparel, jewelry, firearms, sports equipment, and other personal possessions." The Paynes wrote "125.00" on this line. On another schedule they claimed that their clothing was exempt and worth $125. This means that they were claiming that they owned no "jewelry, firearms, sports equipment, and other personal possessions". Another line item calls for "interests in insurance policies (itemize surrender or refund values of each)"; the Paynes wrote "0.00" here. Still another item requires the value of "books, pictures, and other art objects, stamp, coin, and other collections." The Paynes wrote "0.00" on this line too. Because the Paynes denied that they had any books, we need not consider whether the encyclopedia could have been exempted as "school books" under the Illinois statute
 
 
 [3]
 The parties assume that the limit in Illinois is $2,000. But until the end of 1981 the limit was only $1,000. See Ill.Rev.Stat. ch. 52 Sec. 13(b) (1981). This may explain why the Paynes filed a list claiming only $1,080 in exempt property even though, they now tell us, they could have put more within the $2,000 allotment. We need not pursue the point
 
 
 [4]
 This makes it unnecessary for us to decide whether there is a difference between "market value," to which the Paynes' expert testified, and "original price less depreciation," to which the trustee's expert testified. The Paynes argue that market value is the price that could have been realized at a distress sale, and that this is the Illinois measure of value. This dispute would be pertinent only if the bankruptcy court needed to determine just how much property could have been squeezed into the limit, but it did not need to do this even on the parties' assumption (see note 3, supra ) that the limit was $2,000. Cf. Alan Schwartz, The Enforceability of Security Interests in Consumer Goods, 26 J.L. & Econ. 117, 124-39 (1983) (discussing whether creditors maximize the price of assets on which they realize)
 
 
 [5]
 Lewis v. Thompson, 28 B.R. 351, modified, 30 B.R. 741 (Bankr.M.D.Pa.1983), on which both parties and the bankruptcy court relied, involved an initial list of exemptions hastily filed and quickly amended; the court accepted the amendments. This did not happen here. Cf. In re Snow, 21 B.R. 598, 601 (Bankr.E.D.Cal.1982) (if property is listed on the claim of exemption, the debtor gets its full insured value even if that value exceeds the market price on the schedule)
 
 
 [6]
 The cash surrender value of the policy was an asset of the estate. In order to keep the policy, the Paynes should have charged the surrender value against their maximum exclusion
 
 
 [1]
 In fact, the majority concedes that, "the Paynes get whatever the proceeds happen to be for the property that was exempted." Slip op. at 204
 
 
 [2]
 In addition, under Rule 1009 of the Federal Rules of Bankruptcy Procedure a debtor may amend any schedule "as a matter of course at any time before the case is closed," including lists of exempt property. Lucius v. McLemore, 741 F.2d 125, 127 (6th Cir.1984) (per curiam). Of course, the debtor must make a request to invoke Rule 1009. Such an amendment would, in my view, meet the majority's concern as to what items are attributable to the categorical listing of furniture, dishes and small appliances, as well as its query about those other items that properly could be claimed as exempt (e.g., the encyclopedia). The debtors may well be entitled to additional proceeds under this approach