### In re B. COHEN & SONS CATERERS, INC.

**Civ. A. No. 89–3348.
Bankruptcy No. 87–4917.
Adv. No. 88–2049.**

United States District Court,
E.D. Pennsylvania.

Dec. 11, 1989.

Paul Breen, Pepper Gordon & Breen, P.C., Philadelphia, Pa., for plaintiff/debtor.

Robert C. Perry, Wilson & Perry, P.C., Mark E. Kogan, Abramson Cogan Kogan Feedman & Thall, P.C., Philadelphia, Pa., for New Plan Realty Trust.

Daniel P. Bernstein, Philadelphia, Pa., for Marvin Fives and Marvin Fives Food Equipment Corp.

James J. O'Connell, Asst. U.S. Trustee.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

The defendant, New Plan Realty Trust ("New Plan"), in the action below, has appealed the March 24, 1989 decision of the Bankruptcy Court in which defendants were ordered to pay compensatory and punitive damages for action it found violative of a stay order under 11 U.S.C. § 362. For the following reasons, the Bankruptcy Court's decision is REMANDED for clarification.

## I. FACTUAL BACKGROUND

Plaintiff in the underlying action, B. Cohen & Sons Caterers, Inc. ("debtor"), operated a catering business in the Roosevelt Mall Shopping Center in Philadelphia for approximately 23 years. Alexander and Helen Cohen, husband and wife, operated the business as President and Vice–President, respectively. At all times relevant to this action, debtor leased the premises at the Roosevelt Mall from New Plan Realty Trust, a defendant in the action below. On September 30, 1987, debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code, which matter is presently pending before the Bankruptcy Court. New Plan has been aware of the bankruptcy proceedings at all times relevant to the present action.

The Bankruptcy Court found that New Plan violated a stay order issued in the underlying bankruptcy proceedings by selling, through Marvin Fives Food Equipment Corporation ("Fives"), various articles of debtor's property that remained on the leased premises after the lease had expired. The Bankruptcy Court awarded debtor actual and punitive damages for New Plan's actions, and New Plan has appealed.

## II. DISCUSSION

### A. Standard

When reviewing a decision by the Bankruptcy Court on appeal, this Court is directed as follows:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankr.R. 8013.

■ Speaking on the standard that a court should apply under Federal Rule of Civil Procedure 52(a),[1] the Supreme Court held that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Thus, a finding is only clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently. *Id.* 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

### B. *The Bankruptcy Court's Findings of Fact*

This Court finds the Bankruptcy Court's findings of fact not clearly erroneous. The Bankruptcy Court, and not this Court, was presented with the evidence in this case. While conflicting evidence was presented in certain areas of this case, the Bankruptcy Court's determinations are not clearly erroneous; the findings of fact are certainly "plausible," and appear from the transcript to be entirely reasonable. This Court is not permitted to second guess the Bankruptcy Court's determination of truthfulness and believability. Accordingly, the Bankruptcy Court's findings of fact are affirmed.

### C. *The Bankruptcy Court's Conclusions of Law*

Filing for bankruptcy under Chapter 11 triggers an automatic stay against other proceedings against the debtor, 11 U.S.C. § 362(a); *In re Lile*, 103 B.R. 830, 836 (Bankr.S.D.Tex.1989). Section 362 provides:

---

**1.** Federal Rule of Civil Procedure 52(a) imposes the same "clearly erroneous" standard as found in Bankruptcy Rule 8013.

Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

    \*    \*    \*    \*    \*    \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....

11 U.S.C. § 362(a)(1) & (3).

The legislative history of the stay provision provides that "the automatic stay is one of the fundamental protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts and permits the debtor to attempt repayment or reorganization." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340–42 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–99.

While the stay does not require actual notice to be effective, *Lile,* 103 B.R. at 836, New Plan had notice of the Chapter 11 proceedings during all material times in this action. *See* Exhibit 4 to Bankruptcy Record ¶ 4. This does not mean, however, that New Plan was forever foreclosed from obtaining relief against the debtor and/or Mr. Cohen. Section 362 of the Bankruptcy Code provides that the Bankruptcy Court, on request after a hearing, shall grant relief from the stay in certain situations. Two such Orders granting relief from the stay were in fact granted in this matter. *See* Defendant's Exhibits D–3 & D–4.

■ These Orders, however, did not grant New Plan any relief from the stay that enabled it to dispose of debtor's prop-

erty in satisfaction for rent arrears, even if New Plan was acting pursuant to a Sheriff's Levy or other judgment. The purpose of the stay provision is to halt all creditors, whether they be judgment or otherwise. The Bankruptcy Court's characterization of the relief Orders from the stays is entirely accurate: The relief from the stays was simply for New Plan to regain possession, not for it to convert and destroy debtor's property. Since the Bankruptcy Court found that New Plan willfully disposed of debtor's property, it correctly found that New Plan violated the stay order.[2] Accordingly, that Court's Order is affirmed in that respect.

### D. *The Bankruptcy Court's Damages Award*

#### 1. Standard

■ The standard of review applied to the Bankruptcy Court's award of damages is the same as applied to its findings of fact: The Bankruptcy Court's decision will only be disturbed if this Court finds it to be clearly erroneous.

#### 2. Actual Damages

■ Damages are covered by Section 362(h) of the Bankruptcy Code. That section provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A violation of an automatic stay does not, in itself, require the award of damages; the action charged must be "willful." *In re Wagner,* 74 B.R. 898, 901 n. 8 (Bankr.E.D.Pa.1987). Willful has been defined as deliberate or intentional, *In re Mewes,* 58 B.R. 124, 128 (Bankr.D.S.D. 1986), and has been found where the party acts with knowledge of a pending bankruptcy proceeding. *In re Meinke, Peterson & Damer, P.C.,* 44 B.R. 105, 108 (Bankr.N.D.Tex.1984).

---

**2.** Since the Court affirms the Bankruptcy Court's decision on this ground, it need not address the Bankruptcy Court's determination

that New Plan's actions amounted to a conversion of debtor's property.

Here, the Bankruptcy Court's finding that New Plan's actions were "willful" for purposes of determining actual damages was not clearly erroneous. New Plan knew of the bankruptcy proceedings underlying this case, and even petitioned for relief from the stays involved in those proceedings. Thus, it knew that all of debtor's and Mr. Cohen's property, except for the fixtures attached to the premises, was subject to the stay order. Not only is the Bankruptcy Court's holding in this respect not clearly erroneous, it is perfectly reasonable.

### a. *Amount of Damages*

The Bankruptcy Court concluded that the amount of actual damages was $50,000. Defendant first claims that the Court erred by not using the amount listed on debtor's Schedule B, which New Plan claims is $11,500, and the Bankruptcy Court found to be $16,500.[3] Debtor's Schedule B was amended subsequent to trial to reflect a total value of $418,631.

Defendant claims that debtor should be estopped from asserting a value other than that contained in its Schedule B. In support of this claim, defendant cites *Payne v. Wood*, 775 F.2d 202 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722. In *Payne*, the Court held that, if debtors under Chapter 11 "could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Id.* at 205. The Court held that the "operation of the bankruptcy system depends on honest reporting." *Id.*

The situation presented here is opposite that presented to the Court in *Payne*. There, the Court was concerned with debtors omitting assets from their Schedules to avoid creditors. Here, New Plan is concerned with the debtor adding an exaggerated number of assets or value thereof to their Schedule since New Plan is potentially liable for these assets. New Plan's worries are not entirely unfounded. New Plan, as the largest unsecured creditor, stood to lose substantially under the initial Schedule. If debtor's amended Schedule B is now accepted, or anything higher than the original Schedule B, New Plan again stands to lose substantially since it is liable for the nonfixture property sold from the premises.[4]

This Court does not make a de novo review of the record, but only determines whether the Bankruptcy Court's decision was clearly erroneous. The Bankruptcy Court was attempting to arrive at an accurate measure of damages sustained, and found the testimony of Marvin Fives to be credible—this was not clearly erroneous.

Defendant claims that, if Marvin Fives's testimony is accepted as an accurate accounting of debtor's assets, the Bankruptcy Court erred by failing to deduct from the award: (1) $9,000 as the value of property Mrs. Cohen testified she removed from the premises; (2) $10,697 that Fives gave to debtor as the amount he made at the sale; and (3) $12,000 for the amount it cost to remove the property from the premises. The Court will first consider the $9,000 and $10,697 amounts.

The Bankruptcy Court purportedly took these amounts into account by stating:

"We believe that the apparently totally disinterested testimony of Fives is the best measure of the value of the property on this record. Fives was unbiased and obviously had some expertise in this area. We discount his replacement figures because, again, we do not consider the cost of replacement to be the proper measure of the damages of the Debtor. That leaves us with Fives' estimate of the market value of the property in the rather wide $50,000 to $100,000 range.

3. The discrepancy between New Plan and the Bankruptcy Court is apparently the $5,000 listed as "inventory" on Schedule B's Summary assets list. Exhibit 13 of Bankruptcy Record. This amount is for Beer, Wine Liquor, and Drygoods, as listed on Schedule B–2. *Id.* The Bankruptcy Court did not adopt this figure as the amount of

actual damages and this Court finds such decision not clearly erroneous.

4. The fact that the amended Schedule is so much greater than the initial Schedule—more than 25 times greater—raises concerns that the initial Schedule may not be credible.

The Debtor did recover about $9,000 worth of property on or about August 18, 1988; has recovered or apparently will recover $10,697 from the proceeds realized by Fives; and, according to the Landlord, it is holding other property of the Debtor. Taking these factors into account and in light of an inclusion, in our order, of a directive to the Landlord to turn over all of the Debtor's property retained by it, we shall set the figure at the low end of Fives' estimate. We therefore conclude that the value of the Debtor's property lost, and hence its actual damages, are $50,000."

Defendant claims that this was clearly erroneous. Defendant observes that, on direct examination, Marvin Fives testified that a sale of everything could have netted him $100,000. On cross-examination, however, Marvin Fives testified that he "might have exaggerated a bit" and that a "more realistic" estimate would place that figure at $50,000.

■ This Court finds the Bankruptcy Court's decision in this regard in need of clarification. If the Bankruptcy Court used Marvin Fives's property valuation of $50,000 as a benchmark for its analysis by not reducing that figure by the $9,000, $10,697, and the value of the property in New Plan's possession, then the calculation is apparently incorrect. If, on the other hand, the Court determined a higher benchmark of $69,697 plus the value of the property in New Plan's possession, then its calculations appear appropriate. Therefore, the Bankruptcy Court is requested on remand to clarify the apparent inconsistency in the calculation.

Defendant also claims that the Bankruptcy Court's decision is clearly erroneous for failing to reduce the actual damages awarded by the cost incurred by Fives to remove the debtor's property from the premises. During cross-examination, Marvin Fives testified that he had estimated his cost of removing the property from the premises at about ten to twelve thousand

dollars. The record indicates that substantial demolition was involved in making the premises habitable for the new tenants. *See, e.g.,* TR at 205.

■ The evidence suggests that the cost of $10,000 to $12,000 required to remove the property was primarily involved in demolition and removal of the fixtures. Debtor, however, was not responsible for the removal of the fixtures. The debtor was only responsible for the removal of and are only being compensated for the nonfixture property actually removed. It is inconceivable that it cost $10,000 to $12,000 to remove some pots, pans, and kitchen equipment. Thus, the Bankruptcy Court properly included this amount.

### 3. Punitive Damages

The Bankruptcy Court awarded two forms of punitive damages: (1) a flat figure award of $10,000; and (2) a bar to New Plan sharing in the distribution of debtor's estate.

■ Damages are covered by Section 362(h) of the Bankruptcy Code. That section provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). In *In re Aponte,* 82 B.R. 738 (Bankr.E.D.Pa.1988), the Court observed that " 'something more than a bare violation justifying compensatory damages or injunctive relief' " is required before punitive damages are appropriate. *Id.* at 745 (quoting *Cochetti v. Desmond,* 572 F.2d 102, 106 (3d Cir.1978). The following factors are relevant in determining whether to award punitive damages and the amount of such damages: (1) the nature of the defendant's conduct; (2) the defendant's ability to pay;[5] (3) the motives of the defendant; and (4) any provocation by the debtor. *See In re Wagner,* 74 B.R. 898, 905 (Bankr.E.D.Pa.1987); *In re Tigue,*

---

**5.** This factor is considered since punitive damages should act as a penalty, which depends on

the defendant's pocketbook.

82 B.R. 724, 737 n. 3 (Bankr.E.D.Pa.1988); and *Aponte,* 82 B.R. at 745–56.

█ The Bankruptcy Court held that punitive damages are appropriate in this case since New Plan's conduct was oppressive and outrageous. This finding was not clearly erroneous. It is plain that New Plan willfully violated the stay orders, and the Bankruptcy Court found that punitive damages were appropriate.

## CONCLUSION:

In sum, the Bankruptcy Court's decision is affirmed in all respects except that this matter is remanded to that Court to clarify the apparent inconsistency in its calculation of the measure of actual damages sustained.