**In re Shmuel KLEIN, Debtor.**

**Bankruptcy No. 98–40447 (NLW).**

United States Bankruptcy Court,
D. New Jersey.

Oct. 21, 1998.

Shmuel Klein, Mahwah, NJ, Pro Se.

Thomas Greenberger, Brooklyn, NY, Creditor pro se.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter comes before the Court via a motion by Shmuel Klein ("Klein"), debtor, seeking actual and punitive damages for a willful violation of the automatic stay pursuant to § 362(h) of the Bankruptcy Code. The following constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. Pursuant to 28 U.S.C. § 157(b)(2)(A) and (G) this matter is a core proceeding. Further, the court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.

### Facts and Procedural History

On September 4, 1996 Tomas Greenberger, Esq. ("Greenberger") obtained a judgment in the Supreme Court of New York against Klein in the amount of $4250 together with interest. Klein appealed from this judgment to the Appellate Division, which appeal was denied on May 19, 1997. On or about August 3, 1998, Greenberger served Bank of New York ("BONY") with a restraining notice.[1] The notice instructed BONY to restrain all of Klein's bank accounts. On August 13, 1998, BONY restrained three bank accounts. Klein claims that one account was used for his law practice, the second account was a client escrow account and that the third account was a joint account held in both his and his spouse's name.

On August 13, 1998 Klein filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On August 14, 1998 Klein served both BONY and Greenberger with a notice advising them of his bankruptcy filing. Klein

---

1. It is not outcome determinative, but for accuracy of the record BONY claims that they received the restraining notice on August 7, 1998. The certifications of the parties contain several ambiguities regarding the dates when notices were served.

asked BONY and Greenberger to release the restraint on his bank accounts but Greenberger refused. In a letter dated August 21, 1998, Klein advised BONY and Greenberger that they were in violation of the stay and that Klein would file a motion seeking damages for willful violation of the automatic stay against both BONY and Greenberger unless they released the accounts. On August 24, 1998, a bank officer at BONY advised Greenberger that unless he filed a motion with this court to require BONY to continue to restrain the accounts, BONY would release the restraint within forty eight hours.

On August 28, 1998, Klein filed a motion for willful violation of the automatic stay. The motion sought the release of his bank accounts, attorney's fees in the amount of $7,548.50 and punitive damages in the amount of $10,000 [2]. Thereafter, Greenberger filed a motion to dismiss Klein's petition, or in the alternative, to lift the automatic stay, and impose sanctions upon Klein for frivolous conduct. Following a hearing on September 8, 1998, this court granted Klein's motion in the following respects: The court found that Greenberger willfully violated the automatic stay, and that pursuant to § 362(h) the Debtor was entitled to reasonable attorney's fees. Furthermore, the court reserved on the issue of whether to impose punitive damages against Greenberger. It also found that the accounts restrained by BONY are property of the estate and that Greenberger's pre-petition notice of restraint, neither created any lien rights in Greenberger, nor terminated the debtor's rights. Accordingly, this court ordered the release of the accounts held by BONY.

Klein's bank accounts were frozen from the filing of his Chapter 13 petition on August 13, 1998 until the court entered an order releasing the accounts on September 8, 1998. During that period Klein claims that seventeen checks "bounced". BONY, on the other hand, asserts that only 6 checks "bounced" and that the Debtor was aware that his accounts were frozen and that as such he should not have written out any new checks.

Klein also claims that he could not conduct his law practice because his law practice account was frozen and that he suffered great humiliation because his client escrow account was also frozen. For these reasons he concludes that he is entitled to punitive damages.

*Discussion*

A. *Reasonableness of legal fees*

The primary issue in this case is whether the court should sanction Greenberger with punitive damages. However, because the reasonableness of the attorney fees to be awarded remains an issue, the court will address that matter first.

Greenberger argues that any allowance of attorney fees is unreasonable. He further contends that if the court nonetheless believes that some award of attorney fees is appropriate, the fees allowed should be significantly reduced, as the amount sought is not reasonable.

■ The court rejects Greenberg's contention that Klein did not incur attorney fees because he represented himself and thus did not actually expend funds for legal representation. Such an argument completely ignores the fact that significant legal services were expended as a consequence of Greenberger's acts. Indeed, these legal services constitute the actual damage Klein suffered. If the instant debtor were not an attorney he would have had to engage one to represent him. The court will not compound the injury Klein suffered by the violation of the automatic stay by refusing to award the fees incurred in his successful effort to demonstrate the violation. Greenberg's argument is legal sophistry and manifestly unfair.

■ However, Greenberger correctly contends that the court has the obligation to award only reasonable fees. Greenberger argues that Klein's hourly rate is too high and that some of the time expended was unnecessary. The court finds that Klein's hourly rate of $225.00 per hour falls within the range of rates charged by attorneys who

---

**2.** Klein is seeking damages in the amount of either $10,000 or 100,000 it is not clear, because

Klein's papers have conflicting amounts.

regularly appear before it on both Chapter 7 and Chapter 13 matters. As a consequence, the court concludes that the rate charged is not unreasonable.

■■■ The court does agree with Greenberger that the amount allowed for the services should be reduced. The court is guided in its examination of each time entry by whether the service was reasonable, necessary, and beneficial. *See, In re Sharon,* 200 B.R. 181, 201 (Bankr.S.D.Ohio 1996). The court reduces the fees sought by $2,745.00 and reduces the expenses sought by $12.20. Thus, the court allows total fees and expenses to Klein of $4,791.30. To reach this total, the court disallowed 9.2 hours spent in preparation of pleadings and a portion of what appears to be travel time to attend the two court hearings. Additionally, .9 hours were compensated at $75.00 per hour to reflect the ministerial nature of the services. Finally, photocopying was allowed at 10 cents per page and faxes were allowed at 50 cents per page to comport with district practice.

### B. *Punitive Damages*

Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A number of courts adopted the standard set forth by the court in *In re Wagner,* 74 B.R. 898 (Bankr. E.D.Pa.1987), to determine when "appropriate circumstances" exist for an award of such damages under section 362(h). In *In re Wagner,* the court stated that:

> Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

*Id.* at 903–904 (Quoting in part *Cochetti v. Desmond,* 572 F.2d 102, 106 (3rd Cir.1978)).

■■■ The courts following *Wagner* have applied the following factors to determine whether to award punitive damages and the amount of such damages: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor. *See In re Wagner,* 74 B.R. 898, 905 (Bankr.E.D.Pa.1987); *In re Tigue,* 82 B.R. 724, 737 n. 3 (Bankr.E.D.Pa.1988); *In re Aponte,* 82 B.R. 738, 745–746 (Bankr. E.D.Pa.1988), and *In re B. Cohen & Sons Caterers, Inc.,* 108 B.R. 482 (E.D.Pa.1989), appeal dismissed, 908 F.2d 961 (3rd Cir. 1990), aff'd, 944 F.2d 896 (3rd Cir.1991). The ability to pay is considered since punitive damages should act as a penalty, which depends on the defendant's pocketbook. *See In re B. Cohen & Sons Caterers, Inc.,* 108 B.R. 482, 488 n. 5 (E.D.Pa.1989) (Citations omitted). Other courts have held that punitive damages are appropriate "[w]here an arrogant defiance of the federal law is demonstrated". *Matter of Mullarkey,* 81 B.R. 280, 284 (Bankr.D.N.J.1987)(Quoting *In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 255 (Bankr.D.Conn.1985)).

Both *Wagner* and *Aponte* involved threats of physical harm so shocking that it was clear to the court that punitive damages must be awarded. In *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987), defendant, a creditor, burst into debtor's home and threatened "to blow his brains out" in an effort to convince him to return trucks. *See Id.* at 900–901. Finding no out-of-pocket losses or long-term physical or emotional harm the court awarded the debtor with $100 compensatory damages. *See Id.* at 905. The court then determined that the defendant was an individual with moderate to middle level income and awarded the debtor with $500 in punitive damages finding that it was "sufficient to impress Ivory [defendant] with his obligation to comply with orders of this court and to deter future transgressions." *Id.*

Similarly, in *In re Aponte,* 82 B.R. 738 (Bankr.E.D.Pa.1988), the court found punitive damages appropriate where the defen-

dant, a landlord, acted with actual knowledge of the stay and violated two court orders instructing him to provide the debtor, his tenant, with hot water and heat. The debtor in that case was deprived of heat and hot water for a period longer than a half a year. The court also took into account the two children that were living with the debtor at the time. The court pointed out that "[a]n award of punitive damages 'should be gauged by the gravity of the offense and set at a level sufficient to insure that it will punish and deter' ". *Id.* at 745 (quoting *Mercer v. Def, Inc.*, 48 B.R. 562, 565 (Bankr.D.Minn. 1985)). The court observed that they "have never seen a landlord act with such a reckless disregard of the law, the bankruptcy court and the rights of others." *Id.* at 747. Concluding that the defendant was an individual of moderate income the court awarded punitive damages in the amount of $2000.[3] *Id.* at 746. Conversely, in *In re B. Cohen & Sons Caterers, Inc.*, 97 B.R. 808, 811–12 (Bankr.E.D.Pa.), aff'd. and remanded for clarification, 108 B.R. 482 (E.D.Pa.1989), a landlord obtained relief from the automatic stay and regained possession of its premises but then proceeded to seize, destroy and otherwise dispose of the debtor-tenant's assets despite the debtor's attempts to remove the property from the premises. *See Id.* at 811–12. There the court held that although there were no physical threats by the defendant, punitive damages should nevertheless be awarded. The court held that "the body of an inanimate corporation is its assets. The landlord committed a figurative homicide of the debtor in its course of actions, and greatly decreased the potential alternatives which it now has available to it in its efforts to reorganize". *Id.* at 818. Finding that the defendant was a large realty trust which owns several shopping centers the court awarded punitive damages in the amount of $10,000. The court distinguished between an individual defendant with moderate income such as the defendants in *Wagner* and *Aponte*[4] and a corporate defendant that has a plethora of assets. *Id.*

At the outset it is important to note that a determination of punitive damages is fact specific. A review of the key facts in chronological order in the instant case is helpful.

1) On September 3, 1996, Greenberger obtained a judgment against Klein in the amount of $4250.

2) Thereafter on August 8, 1998, Greenberger filed a notice restraining Klein's accounts with BONY.

3) On August 13, 1998, BONY restrained all of the accounts in Klein's name including: personal account, client escrow account and the account used to run Klein's law practice.

4) On or about August 13, 1998, Klein filed his voluntary petition under Chapter 13 of the code.

5) The next day Klein informed Greenberger and BONY of his filing and asked them to release the accounts. They refused.

6) On August 21, 1998, Klein sent a letter to Greenberger and BONY stating that unless they release the account he will sue both of them for willful violation of the stay and will seek punitive damages.

7) On the 24th of August, BONY gave Greenberger forty eight hours to file a motion in the bankruptcy court seeking an order not to release the account.

8) Meanwhile, Klein apparently continued to write checks against the accounts knowing that it was still frozen and a number of checks "bounced".

9) On August 28, 1998, Klein filed a motion for willful violation of the stay seeking an order releasing the accounts, attorney's fees and punitive damages.

10) Finally, on September 8, 1998, the court heard and granted Klein's motion in the following respects: The court ordered BONY to release Klein's bank accounts and the court awarded Klein reasonable attorney's fees.

11) At the hearing Klein claimed damage to his practice's reputation as well as embar-

---

**3.** In setting the award the court did take into account the fact that they also awarded treble damages against the defendant in the amount of $11,080.20

**4.** The courts there awarded punitive damages in the amount of $500 and $2000 respectively.

rassment and shame because his checks bounced. No proof was provided to the court of actual damages, other than the value of his legal services in connection with his motion.

 Applying the law to the facts of the instant case we must keep in mind the purpose of punitive damages. "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." Restatement (Second) of Torts § 908 (1979).

A decision analogous to the case at hand is *In re Stephen W. Grosse, P.C.*, 84 B.R. 377 (Bankr.E.D.Pa.1988), aff'd, 96 B.R. 29 (E.D.Pa.1989), aff'd, 879 F.2d 857 (3d Cir.), *cert. denied sub nom. Jakobowski v. Dubin*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989). The debtor in *Grosse* alleged that a creditor's attorney violated the automatic stay by refusing to dissolve a writ of execution after entry of a bankruptcy court order directing that it be dissolved. *See Id.* at 380. The court held that the plaintiff not only violated the stay but also had an affirmative duty to dissolve the writ. *See Id.* at 384. Furthermore, the court found the defendant to be in contempt of court. Finally, the court held that punitive damages should not be awarded because the attorney fees and costs incurred by the debtor, which he would be permitted to recover, "were likely to constitute a significant sum".[5] *Id.* at 388. The court held that "[u]nder these circumstances, the award of attorney's fees and costs will be sufficient to deter Jakobowski [defendant] from future violations of the automatic stay and to punish him for his conduct in this case." *Id.*

 Here, Klein's accounts were frozen for a period of less than a month as opposed to a period of close to a year and a half as in *Grosse*. Like the attorney in *Grosse*, Greenberger is an individual attorney and not a corporation with substantial assets. Also, the record here does not indicate that Klein suffered demonstrable damages to his law practice. Finally, Klein has been allowed

significant attorney's fees in the amount of $4,791.30. Payment of that sum by Greenberger will undoubtedly have a determent effect, as the judgment he sought to collect was not much larger.

### Conclusion

Taking into account the gravity and duration of the offense, the nature of Greenberger's conduct the extent of the harm caused to Klein, and guided by the case authority referenced in this opinion, I find that attorney's fees in this case are likely to "constitute a significant amount" and are sufficient to serve as both punishment and as a deterrence to any such future conduct by Greenberger. Consequently, punitive damages are not necessary and the court denies Klein's request for same.

---

5. The court estimated that attorney's fees would be about $14,000.