**MERRILL LYNCH CREDIT CORP., Plaintiff,**

v.

**James KING and Omah King, Atlantic Steel Corp. V.I. Bureau of Internal Revenue, Buccaneer Mall Assoc., Inc., Defendants.**

**Atlantic Steel Corp., Cross-claimant,**

v.

**James King and Omah King, Buccaneer Mall Assoc., Inc., Cross-defendants.**

**No. Civ. 1995–053.**

District Court, Virgin Islands, D. St. Thomas and St. John.

June 12, 2000.

---

**MEMORANDUM**

MOORE, District Judge.

Pending before the Court are defendant James King's emergency motion to vacate the foreclosure sale and subsequent court orders ["Emergency Motion to Vacate"], emergency motion for sanctions against Eddy Rivera, Esq., and Atlantic Steel Corporation ["Emergency Motion for Sanctions"], and motion to reconsider this Court's July 1, 1999 order that Mr. King supplement the record and show cause why this Court should not annul his bankruptcy stay ["Motion to Reconsider"]. The Court will deny in part and grant in part King's Emergency Motion to Vacate, deny without prejudice his Emergency Motion

for Sanctions, and deny his Motion to Reconsider.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants James King ["King"] and Omah King [collectively the "Kings"] were the owners of real property known as Parcel No. 12, Estate Frenchman's Bay [the "property"]. Sometime in 1994, Merrill Lynch Credit Corp. ["Merrill Lynch"], the holder of a note and first priority mortgage on the property, notified the Kings that they were in default. On March 24, 1995, Merrill Lynch filed its first complaint against the Kings. It later amended its complaint to join, as defendants, the junior lienholders, including Atlantic Steel Corporation ["ASC"]. ASC filed a cross-claim against the Kings on September 23, 1996, alleging that the Kings defaulted on their note and mortgage with ASC. Subsequently, on February 18, 1997, Merrill Lynch resolved its dispute with the Kings and moved to dismiss its complaint. The Court granted Merrill Lynch's motion and dismissed its case against the Kings and the other defendants. This left ASC's cross-claim against the Kings.

On April 9, 1997, this Court entered a default judgment against the Kings in favor of ASC. The United States Marshal held a foreclosure sale of the property on December 1, 1998, which began between 10:00 and 10:02 a.m. Atlantic Standard Time ["AST"] and ended before 10:10 a.m. AST.[1] Buyer-intervenor Albert George ["George"] was the successful bidder.

That same day at 9:10 a.m. Eastern Standard Time ["EST"], which was 10:10 a.m. AST, King filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Virginia, Alexandria Division (Case No. 98–18517–SSM). King concedes that he made the "emergency filing" to stay the foreclosure sale that was scheduled that same day. King's bankruptcy petition, however, failed to include a complete list of creditors and assets, as required by law. As a result, the Office of the United States Trustee investigated whether King had left information out of his petition in bad faith. King denied there was any bad faith, and in turn blamed the Maryland attorney who filed the petition for the omissions, even though the petition showed that King filed the petition himself, without an attorney.

On February 18, 1999, the chapter 13 trustee filed a motion to dismiss the petition because of unreasonable delay by King, which was prejudicial to the rights of creditors under 11 U.S.C. § 1307(c)(1). The trustee also objected to Kings' Chapter 13 plan because it failed the liquidation test of 11 U.S.C. § 1325(a)(4). King responded on February 26th by filing his own motion to voluntarily dismiss the case under section 1307(b). The bankruptcy judge dismissed King's case on March 5, 1999.

On March 10, the United States Trustee moved to vacate the order of dismissal for the limited purpose of adjudicating the trustee's March 5 motion alleging concealed assets, failure to list creditors, and false assertion of venue. The bankruptcy court held evidentiary hearings on April 13 and May 17, 1999, to determine whether King filed the bankruptcy petition in bad faith. In its May 18th order, the bankruptcy court, without entering an explicit finding of bad faith, amended its March 5th dismissal and extending to two years the period during which King could not file another bankruptcy petition.[2] The Court

---

1. Virginia falls within Eastern Standard Time. The Virgin Islands is located within the Atlantic Standard Time Zone.

2. Ordinarily, under 11 U.S.C. 109(g)(2), a debtor who requested and obtained the voluntary dismissal of a title 11 case following the filing of a request for relief from the automatic stay is barred from re-filing bankruptcy for only 180 days. Here, the bankruptcy judge went out of his way to bar King from invoking further bankruptcy protection for two years.

premised its order on "the reasons stated orally on the record" the previous day, which included that "it [was] perfectly clear that Mr. King did not take this bankruptcy, Chapter 13 filing very seriously or treated it as anything other than apparently the cheapest injunction in town." (May 17, 1999, Tr. 52.)

Returning to this case, King filed a suggestion of bankruptcy in this Court on December 8, 1998, indicating that he had filed *pro se* for chapter 13 bankruptcy in the United States Bankruptcy Court, Eastern District of Virginia on December 1, the day of the foreclosure sale. On December 18th, ASC filed notice of satisfaction and release of judgment, and on January 7, 1999, this Court confirmed the sale, and four days later the proceeds from the sale were released.

On April 22, 1999, King filed his Emergency Motion to Vacate the foreclosure sale and subsequent court orders, and on June 21st, he filed his Emergency Motion for Sanctions against Eddy Rivera, Esq., and ASC. Both George and ASC opposed the Emergency Motion to Vacate. On July 1, 1999, this Court ordered that King supply the Court with a certified copy of the docket and all pleadings and orders contained in the record of his petition before the Virginia Bankruptcy Court and show cause why this Court should not annul the automatic stay of proceedings based on his filing bankruptcy in bad faith [the "July 1st Order"]. On July 15th, King moved to reconsider the July 1st Order, and on July 23rd filed a response to the July 1st Order. ASC replied, and King filed a sur-reply. George replied to King's response and sur-reply on December 1, 1999.

## II. DISCUSSION

### A. Motion to Reconsider

King moves the Court to reconsider its tentative finding that the foreclosure sale preceded the bankruptcy filing, and its order that King produce the bankruptcy file of the Virginia bankruptcy court and show cause why this Court should not annul the stay based on his bad faith filing. The Court agrees with King that it lacks authority to annul the bankruptcy stay. Otherwise, the Court will deny King's motion as failing to show a manifest error or introduce new evidence regarding the timing of the bankruptcy filing and foreclosure sale, and as moot in all other respects.

### 1. Foreclosure Sale Was Completed Before Filing of Bankruptcy Petition

King has failed to show that the Court committed a manifest error in tentatively finding that the foreclosure sale preceded the bankruptcy filing, and has introduced no newly discovered evidence to prove the same. The Court therefore will not disturb its tentative finding, "based on the filings and evidence before the Court" on July 1st, that the foreclosure sale preceded the bankruptcy filing. *See Bluebeard's Castle, Inc. v. Delmar Mktg., Inc.,* 886 F.Supp. 1204 (D.Vi.1995) ("A motion for reconsideration serves to 'correct manifest errors of law or fact or to present newly discovered evidence.'") (quoting *Harsco v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985)).

In contesting King's motion, ASC has submitted the only new evidence, in the form of filed affidavits, which buttress this Court's tentative finding of fact. The affidavits of Albert George, Alberto Cortes–Dapena, and Eddy Rivera all indicate that the foreclosure sale was completed before 10:10 a.m. AST, and therefore before the bankruptcy filing in Virginia. The affidavit of Alberto Cortez puts the completion of the sale at around 10:07, but no later than 10:10. The affidavit of Albert George puts the completion of the sale at around 10:03 to 10:05, plus about two minutes for clerical matters not part of the sale. The affidavit of Eddy Rivera puts the completion of the sale sometime between 10:07 and 10:12. Therefore, the sale was completed between 10:03 to 10:12

a.m. Further, because the 10:12 estimate includes clerical duties which took a couple of minutes to complete and were not part of the sale itself, the Court finds that the sale was completed before 10:10 a.m. The Court thus holds that the foreclosure sale of the property was valid, having occurred before King filed his bankruptcy petition in Virginia.

### 2. *This Court Cannot Annul the Automatic Stay*

■ King's protest that he should not have to supply this Court with a copy of the Virginia bankruptcy file is moot, since he has already submitted it. Further, this Court has no jurisdiction to annul the stay, which moots any inquiry into whether the filing was in bad faith.

■ "The District Court of the Virgin Islands shall have the jurisdiction ... of a bankruptcy court of the United States" under the Revised Organic Act of 1954, § 22(a), 48 U.S.C. § 1612.[3] This jurisdiction does not, however, give this Court the authority to annul the automatic stay in a chapter 11 proceeding filed in the Virginia bankruptcy court. Rather, this Court is bound by the rulings of the Virginia bankruptcy judge. *See Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."). This is especially true where the matter involves a "core bankruptcy" proceeding.[4] Annulling an automatic stay is one such core bankruptcy proceeding. *See* 28 U.S.C. § 157(b)(2)(G) ("Core proceedings include ... motions to terminate, annul, or modify the automatic stay."). Accordingly, this Court does not have any authority to annul the stay which issued out of the Virginia bankruptcy proceedings.[5]

### B. Emergency Motion for Sanctions

■ The same reasoning requires this Court to abstain from considering sanctions based on an alleged violation of the automatic stay stemming from the proceedings in Virginia. A motion for sanctions under 11 U.S.C. § 362(h) properly belongs before the court that imposed the bankruptcy stay. *See Price v. Rochford*, 947 F.2d 829, 832 n. 1 (7th Cir.1991) ("A claim for damages under section 362(h) should probably have been referred to the bankruptcy court under [local rules and] as a 'core' proceeding .... ") (citations omitted); *In re Shmuel Klein*, 226 B.R. 542, 544 (Bankr.D.N.J.1998) (motion seeking actual and punitive damages for willful violation of automatic stay pursuant to section 362(h) of the Bankruptcy Code is core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G)).

### C. Emergency Motion to Vacate

■ Since the foreclosure sale preceded the filing of the bankruptcy petition, the

---

3. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1994), *reprinted in* V.I.CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73–177 (1995 & Supp.2000) (preceding Title One of the Virgin Islands Code).

4. "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ...." 28 U.S.C. § 157(b)(1). In a core case, a bankruptcy court càn enter a final judgment over which a District Court *for the same district* can exercise only appellate review. *See* 28 U.S.C. §§ 157(b)(1), 158(a) (emphasis added).

5. Bad faith in filing a bankruptcy petition would be "cause" to annul the stay under § 362(d)(1). See 28 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause."). This question is moot, however, since this Court has no jurisdiction to grant the relief requested. Moreover, the Virginia bankruptcy court has already adjudicated this matter, the result of which was the dismissal of this case without an explicit finding of bad faith. Matters relating to a finding of bad faith or annulling the stay directly implicate title 11, and thus more properly belong before the bankruptcy court which heard Mr. King's petition.

Court must deny King's motion to vacate the foreclosure sale. The Court will vacate the later orders entered during the period of the automatic stay, however, because an action to confirm the sale falls under those actions prohibited by 11 U.S.C. § 362(a).[6] *See, e.g., In re Russell Corp.*, 156 B.R. 347, 350 (Bankr.N.D.Ga. 1993) (action to confirm foreclosure sale falls under actions prohibited by section 362(a)); *United States v. Molitor*, 157 B.R. 427, 429 (W.D.Wis.1992) (relief from automatic stay is prerequisite to proceeding with hearing on confirmation of foreclosure sale). As of 10:10 a.m. AST on December 1, 1998, when King filed his bankruptcy petition, the automatic stay went into effect. It remained in effect until the petition was dismissed on March 3, 1999. Accordingly, ASC's motion for an order confirming the foreclosure sale filed and docketed December 13, 1998, and the Court's order confirming the sale filed January 7, 1999 and docketed January 11,

1999, were barred by the stay and, therefore, void *ab initio*. *See In re Graves*, 33 F.3d 242, 247–48 (3d Cir.1994); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991); *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988).[7] The Court will vacate its order confirming the sale. For similar reasons, the Court will also vacate its order releasing the proceeds of the sale.[8]

## III. CONCLUSION

The Court finds it has no jurisdiction to annul the stay of the United States Bankruptcy Court for the Eastern District of Virginia, and will deny the motion to reconsider in all other respects. The Court will deny King's motion to vacate the foreclosure sale, since it preceded the filing of the bankruptcy petition. The Court, however, will vacate the orders confirming the sale and releasing the proceeds, because they were entered during the time the

6. Section 362(a) provides, in part, that the filing of a bankruptcy petition acts as a stay of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

7. ASC's reliance upon *In re Siciliano*, 13 F.3d 748 (3d Cir.1994), for the proposition that this Court's order confirming the sale is merely voidable, not void *ab initio*, is misplaced. The issue in *Siciliano* was whether the bankruptcy court could even entertain a creditor's motion for relief from the automatic stay filed during the pendency of the stay. The Court of Appeals answered in the affirmative and reversed the bankruptcy court's dismissal of the motion, because the motion was a "request" brought under one of the narrow exceptions in 11 U.S.C. § 362(d) by which creditors can request that the court annul or otherwise modify a stay. By contrast, ASC has made no request to annul or otherwise modify the stay, ASC has stated no

authority by which *this Court* could annul or modify a stay imposed by another court, and ASC has not shown (and there is no indication of) how one of the exceptions listed in § 362(d) would apply to this matter. Finally, the voided actions in the instant case are a motion and an order confirming sale, not a "request" of the sort allowed as an exception under § 362(d).

8. At first blush, vacating the confirmation of sale and the release of the proceeds appears futile, since, given that the automatic stay is no longer in force, all a party would have to do is re-file a motion to confirm the foreclosure sale. Voiding the confirmation of sale and confirming the sale anew, however, affects King's substantive rights, as it will "reset" the six-month redemption period. Protecting such substantive interests in property is the primary purpose of the automatic stay provision under title 11.

Further, George's concern that he be reimbursed for taxes he has already paid on the property may be alleviated under 28 V.I.C. § 535, which states that the redeeming party must not only pay "the amount of the purchase money," but also "interest at the legal rate per annum thereon from the date of sale, together with the amount of any taxes which the purchaser may have paid thereon after purchase."

automatic stay was in effect. The Court will deny King's motion for sanctions.

**ORDER**

For the reasons set forth in the foregoing Memorandum, it is hereby

**ORDERED** that King's Motion to Reconsider this Court's July 1, 1999 order is **DENIED;** it is further

**ORDERED** that King's Emergency Motion to Vacate the foreclosure sale of the real property at Estate Frenchman's Bay, Parcel No. 12, is **DENIED;** it is further

**ORDERED** that King's Emergency Motion to Vacate the subsequent court orders confirming sale and releasing the proceeds is **GRANTED,** and the order confirming sale entered March 7, 1999, and the order releasing the proceeds entered March 11, 1999, are hereby **VACATED;** and it is further

**ORDERED** that King's Emergency Motion for Sanctions against Eddy Rivera, Esq., and Atlantic Steel Corporation is **DENIED** without prejudice.